## UNITED STATES v. KEOWN et al.

District Court, W. D. Kentucky.
June 9, 1937.

Bunk Gardner, U. S. Atty., and Eli H. Brown, III, Asst. U. S. Atty., both of Louisville, Ky., for plaintiff.

Rodes K. Myers, of Bowling Green, Ky., for defendants.

HAMILTON, District Judge.

The defendants were indicted in the Bowling Green Division of this court on May 17, 1937, for having in their possession 155 gallons of whisky without stamps affixed to the containers showing the quantity and payment of tax. They were also charged, in the second count of the indictment, with concealing the liquor in a 1936 Ford Coach automobile, motor No. 18-3265263, on one of the public highways of the commonwealth of Kentucky.

The defendants waived trial by jury, submitted the law and facts to the court, and moved to suppress the evidence on which the indictment was obtained because the arresting officer stopped and searched the car without warrant, and, as a result of the illegal search, found in the car the liquor which is the subject of this prosecution. The motion to quash was heard on the trial of the case, and at the conclusion of the evidence was overruled; the defendants found guilty; and the imposition of sentence postponed to December 13, 1937.

Defendants have filed motion and grounds for a new trial, insisting the court committed an error in overruling the motion to suppress. It is conceded by them that if the evidence was legally obtained, they are guilty of the charges laid in the indictment.

It is further urged as grounds for a new trial that the court erred in not requiring the arresting officer to disclose, on cross-examination by defendants' counsel, the name of his informant, who had theretofore told him the time and place where the defendants would possess and transport the liquor, and on which information the arrest and subsequent search of the car were made.

Lester Witherspoon, an agent for the Alcohol Tax Unit, testified the defendant Keown was known to him as a bootlegger and had been arrested November 1, 1934, for manufacturing and possessing untaxpaid distilled spirits, but the charge against him had at that time been ignored by the grand jury. The witness further testified that two or three days before this defendant's arrest a person with whom he was well acquainted and who had theretofore given him similar information, which he had always found to be true, informed him that Keown would transport over Highway 31-W, about April 21, 1937, moonshine liquor in a 1936 Ford Coach automobile, with Kentucky license No. 295-M-6, and on this date, while he was patroling the highway pursuant to his informant's directions, the defendants passed him in the car bearing said license, and he and another agent, Henry Wehmhoff, pursued the car, and it being in the nighttime flashed their light into it, and saw some covered objects in the rear part thereof. The car was heavily loaded and going at a rapid rate of speed. The agents compelled the driver to stop, searched the car, and found 115 gallons of untaxpaid spirits in 23 5-gallon wood jacketed cans in the rear of the car, and also a tank in the back of the car with 8 5-gallon wood jacketed cans.

The defendants were immediately placed under arrest and the car and its contents seized. Agent Witherspoon was asked by defendants' counsel, on cross-examination, the name of his informer. He refused to answer and the court ruled he was not required to disclose the name of the person who had given him the information concerning the defendants' violation of the internal revenue laws.

■ The arrest of the defendants without a warrant and contemporaneous search of the car were valid, if there was probable cause. Compare: Husty v. United States, 282 U.S. 694, 704, 51 S.Ct. 240, 242, 243, 75 L.Ed. 629, 74 A.L.R. 1407. In this case, the arresting officer was asked the name of his informer, but refused to answer and was not required to do so by the lower court. The Supreme Court refused to rule on the competency of the question and on this subject said: "In the course of the hearing on the motion, questions by petitioners seeking to establish the name and identity of the officer's informant were excluded. Petitioners ask review of these rulings on the evidence, but we do not consider them, since they were not assigned as error on the appeal to the Circuit Court of Appeals [48 F.(2d) 1076], and it does not appear that they were presented or passed upon there. Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566 [568] 71 L.Ed. 996."

It is a general rule of law that the duty rests on every citizen to communicate to his government any information he has of the commission of crimes against it, and to encourage such laudable conduct, the information thus given is a government secret and will not be disclosed.

In the case of Vogel v. Gruaz, 110 U.S. 311, 317, 4 S.Ct. 12, 14, 28 L.Ed. 158, Gruaz sued Bircher, Vogel's testator, to recover damages for the speaking by Bircher of false, malicious, scandalous, and defamatory words of Gruaz. The specific charge was that Gruaz had stolen money, a felony under the laws of Illinois. Bircher had communicated the facts showing the commission of the alleged crime to the prosecuting attorney of the state of Illinois, and defense was made that the language used was privileged. The court, in upholding this contention, said: "By the statute of Illinois in force at the time of this occurrence, it was made the duty of each state's attorney to 'commence and prosecute' all criminal actions, suits, indictments, and all prosecutions, in any court of record in his county, in which the people of the state or county might be concerned. (Rev.St.1874, c. 14, § 5, subd. 1 [Smith-Hurd Ill.Stats. c. 14, § 5, subd. 1].) Under this provision it was the province and the privilege of any person who knew of facts tending to show the commission of a crime, to lay those facts before the public officer whose duty it was to commence a prosecution for the crime. Public policy will protect all such communications absolutely, and without reference to the motive or intent of the informer or the question of probable cause; the ground being that greater mischief will probably result from requiring or permitting them to be disclosed than from wholly rejecting them."

In the case of In re Quarles and Butler, Petitioners, 158 U.S. 532, 538, 15 S.Ct. 959, 960, 39 L.Ed. 1080, Henry Worley informed the United States Marshal that one George Terry was violating the internal revenue laws. Defendants with others, as reprisal, went to Worley's house in disguise, took him from his house, beat, bruised, shot at, and otherwise mistreated him. Indictments were returned against them, and they were tried and convicted of a conspiracy to injure, oppress, etc., said Worley.

Defendants moved for arrest of judgment on the following grounds:

"1. Because in said indictment there is no allegation that William J. Duncan was an officer of the United States, and charged with the enforcement of the internal revenue laws; nor is there any allegation that the said William J. Duncan was authorized to take information upon such subject, or to employ persons for the service of the United States.

"2. Because there is no allegation that Henry Worley was in the service or employment of the United States.

"3. Because there is no such official as a United States deputy marshal, as charged in the indictment.

"4. Because there is no such right and privilege secured by the Constitution and laws of the United States, within the meaning of sections 5508 and 5509 of the Revised Statutes of the United States, as that set out in the indictment.

"5. Because there is no crime or offense charged in the said bill of indictment, of which the courts of the United States have jurisdiction."

The court, in denying the writ, said:

"It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States. It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the posse comitatus in upholding the laws of his country. It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offense against those laws; and such information, given by a private citizen, is a privileged and confidential communication, for which no action of libel or slander will lie, and the disclosure of which cannot be compelled without the assent of the government. Vogel v. Gruaz, 110 U.S. 311, 4 S.Ct. 12 [28 L.Ed. 158]; United States v. Moses, Fed.Cas. No. 15,825, 4 Wash.C.C. 726; Worthington v. Scribner, 109 Mass. 487 [12 Am.Rep. 736].

"The right of a citizen informing of a violation of law, like the right of a prisoner in custody upon a charge of such violation, to be protected against lawless violence, does not depend upon any of the amendments to the constitution, but arises out of the creation and establishment by the constitution itself of a national government, paramount and supreme within its sphere of action. * * *

"The necessary conclusion is that it is the right of every private citizen of the United States to inform a marshal of the United States or his deputy of a violation of the internal revenue laws of the United States; that this right is secured to the citizen by the Constitution of the United States; and that a conspiracy to injure, oppress, threaten or intimidate him in the free exercise or enjoyment of this right, or because of his having exercised it, is punishable under section 5508 of the Revised Statutes."

In the case of United States v. Moses, 27 Fed.Cas. page 5, No. 15,825, the defendant was arrested without a warrant on information by a deputy marshal for the crime of counterfeiting. The court, in holding the officer was not required to disclose the name of his informer, said: "The officer who apprehended the prisoner is not bound to disclose the name of the person from whom he received the information, which led to the detention and apprehension of the prisoner. Such a disclosure can be of no importance to the defence in this case, and may be highly prejudicial to the public in the administration of justice, by deterring persons from making similar disclosures of crimes which they know to have been committed."

In the case of Elrod v. Moss (C.C.A.) 278 F. 123, 127, 130, Elrod sued Moss for damages for an illegal arrest and an illegal search of his automobile. Moss testified he acted on information furnished him by the sheriff. The sheriff was asked on cross-examination the source of his information that defendant was engaged in transporting liquor. He refused to answer, and was upheld by the judge. The Fourth Circuit, in sustaining the lower court, said: "Alexander, sheriff, testified he communicated to defendants information he had that plaintiff was transporting liquor. The District Judge properly refused to require him to disclose the source of this information."

In Segurola et al. v. United States (C.C.A.) 16 F.(2d) 563, 566, a criminal information was filed against the defendants charging them with possessing and transporting liquor contrary to the National Prohibition Act (27 U.S.C.A. § 1 et seq.). The case came to the Circuit Court from Puerto Rico. An officer of the insular police force had received confidential information by telephone that the defendants would be transporting the liquor over a certain highway in a Ford car. Acting on this information, the officer went to the place, saw the car and the defendants, attempted to block the highway, was outmaneuvered, followed them, and forced their car into collision with an electric post. The officer was asked, but refused to give, the name of his informer and was sustained by the lower court. The First Circuit sustained this ruling and based its decision on Vogel v. Gruaz, supra; In re Quarles, supra. Circuit Judge Bingham dissented, holding the cited cases were not applicable; that the secrets of state were waived by putting the witness who knew them on the witness stand.

Certiorari was granted by the Supreme Court (275 U.S. 106, 113, 48 S.Ct. 77, 80, 72 L.Ed. 186). The Supreme Court affirmed the Circuit Court of Appeals, but avoided a decision on the confidential nature of the testimony on the ground that proper objections and exceptions had not been taken in the lower court and, further, that the motion to suppress came too late. The Segurola Case, as decided by the Circuit Court of Appeals, has several times been cited as

an authority since the opinion was published, but in view of the decision of the Supreme Court, the Circuit Court of Appeals' opinion is dicta and not authority.

One of the leading cases on this subject, which has been cited with approval by the Supreme Court, is that of Worthington v. Scribner, 109 Mass. 487, 12 Am.Rep. 736. That case was an action in tort in which the plaintiff alleged he was engaged in importing books into the United States, and the defendants, conspiring to injure him or his business, without probable cause, maliciously and falsely represented to the Treasury Department of the United States and to its solicitor that the plaintiff had purchased books in foreign countries and intended to bring them into the United States in fraud of its revenues, and that as a result of such malicious information, books and property of the plaintiff were seized by the officers of the Treasury of the United States and later released when it was found the defendants' information was groundless.

The plaintiff attached to his petition certain interrogatories addressed to the defendants, the answers to which would have required them to furnish information theretofore given to the officers of the Treasury concerning the plaintiff's importation of books into the United States without paying applicable duties thereon. The defendants refused to answer the interrogatories and the plaintiff moved for a rule requiring them to do so. The court, in discharging the rule, said: "It is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications."

Judge Gray, writing for the court, cited several English cases holding the defendant or his counsel shall not be permitted to inquire the name of the persons who give information to the government of smuggled goods.

In Mitrovich v. United States (C.C.A.) 15 F.(2d) 163, the appellant was convicted in the lower court for maintaining a common nuisance, in violation of the National Prohibition Act (27 U.S.C.A. § 1 et seq.). A government witness testified that he saw the defendant, and the place of the nuisance was pointed out to him by an informer. He was asked the name of the informer, but an objection to the question was sustained. The Circuit Court of Appeals approved the ruling of the lower court, citing in support thereof Vogel v. Gruaz, supra; In re Quarles & Butler, supra; Elrod v. Moss, supra.

In the case of Shore v. United States, 60 App.D.C. 137, 49 F.(2d) 519, 522, the appellant was convicted of maintaining a public and common nuisance in violation of the National Prohibition Act (27 U.S.C. A. § 1 et seq.). Search warrants had been issued based on information furnished to officers of the government. The court held the name of the informer need not be disclosed, because the information thus obtained furnished the impulse on which the officers acted, the information itself not being used in evidence. The court based its decision on Segurola v. United States, supra.

In the case of United States v. Rogers et al. (D.C.) 53 F.(2d) 874, 876, the court had before it six cases of defendants charged with having unlawful possession of, and with transporting, intoxicating liquors. The evidence in each case was obtained by stopping trucks on highways in the state of New Jersey, searching them, and finding intoxicating liquors. Information had been obtained from informers as to the violations in advance of search, seizure, and arrest. The court, in holding the information obtained by the officers was confidential, said: "The failure of the government to disclose by whom it was informed is immaterial. To inform is a statutory duty, and sound public policy forbids exposing informers to possible, even probable evil consequences."

In the case of Wilson v. United States (C.C.A.) 59 F.(2d) 390, 392, 394, the gov-

644

ernment had made a search of the premises of a political organization. The appellant was a government witness in the trial of the case against the organization. He testified on direct examination that he had entered the premises of the defendant by means of a key furnished him by one of its members. He was asked on cross-examination the name of the member furnishing the key. He refused to answer and would not do so when admonished by the court. He was committed for contempt and appealed. The court, in holding the witness was required to answer, said: "The question here at issue was whether the evidence secured by a search and seizure should be suppressed. The proceeding was ancillary to a criminal prosecution against the Delaware league. The witness had testified that he had procured access to the rooms of the league on the invitation of a member, who had supplied him with a membership card, a key, and a plan of the building. If these means of access had not been supplied by a member, but had been unlawfully obtained, the evidence secured should be suppressed. Fraternal Order of Eagles v. United States (C. C.A.) 57 F.(2d) 93. To determine this, the information sought could not be withheld. The evidence was 'essential to the proper disposition of the case,' and, in consequence, admissible, and, being admissible, the witness could not withhold it. Upon his refusal to testify he was properly adjudged to be in contempt, and an order of commitment properly followed."

In the case of McInes v. United States (C.C.A.) 62 F.(2d) 180, 181, the appellant was convicted in the lower court for possessing and transporting intoxicating liquor in violation of the National Prohibition Act (27 U.S.C.A. § 1 et seq.). Trial by jury was waived and defendant made a motion to suppress on the ground the evidence on which the prosecution was based was illegally obtained. The arresting officer testified he received a telephone call from a person known to him and who had theretofore furnished him reliable information of the same nature, advising him that a Ford coupé automobile, bearing a certain license number, would travel over a designated public highway loaded with intoxicating liquor, at a certain place. The officer went to the place described by his informant and when the car fitting the description approached, stopped and searched the car, found intoxicating liquor therein, and arrest-

ed the driver. The court, in holding the defendant was not entitled to know the name of the informer, said: "Appellant complains that 'the officer does not disclose the source of his information, the name of his informant, nor does the informant disclose to the agent how he knew that this particular car was engaged in hauling liquor.' In the brief of appellant there appears the following statement, or admission: 'Counsel for appellant realized that it was useless to inquire of the name of the informant since the law does provide that the agent need not reveal the name unless he cares to do so.' In United States v. Rogers (D.C.) 53 F.(2d) 874, 876, it is said: 'The failure of the government to disclose by whom it was informed is immaterial. To inform is a statutory duty, and sound public policy forbids exposing informers to possible, even probable evil consequences.' It would seem that this rule should likewise excuse the disclosure of evidence relating to the circumstances which provided the informant with his knowledge; otherwise, it would likely defeat itself."

In the case of Goetz v. United States (C.C.A.) 39 F.(2d) 903, the appellant was arrested for a violation of the National Prohibition Act (27 U.S.C.A. § 1 et seq.) by the manufacture of liquor. The business was being carried on in a building other than a residence. His arrest was without a warrant and the building was searched in connection with the arrest. The officers testified they had received information that the defendant was carrying on the business at the place where he was arrested. On cross-examination, they were asked to give the name of their informer, but the government's objection to the question was sustained. The Circuit Court of Appeals in upholding the lower court's ruling, said: "It is argued that the search without a warrant was void, but clearly it was not. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. Nor was it error for the trial court in its discretion to refuse to compel the government officers to give the name of their informant. Underhill's Criminal Evidence, § 287; Roscoe's Criminal Evidence, 179; Wigmore on Evidence, § 2374."

In Smith v. United States (C.C.A.) 9 F.(2d) 386, 387, the appellant was convicted for importing liquor into the United States in violation of the Tariff Act of 1922 (42 Stat. 858). The government's evidence

showed he was arrested on information. The court, in holding the name of the informer need not be disclosed, said: "The government's evidence tended to show that the defendants were arrested as they were endeavoring to land liquor. George R. Cole, a federal prohibition agent, testified on cross-examination that he and his associates had information that defendants were to land liquor at the time and place of the arrest. Counsel for defendants then asked: 'Where did you get that information?' The court sustained the government's objection to this testimony, and an exception was reserved. The ruling was correct. The testimony sought would have had no tendency to prove either the guilt or innocence of defendants."

In United States v. Blich (D.C.) 45 F. (2d) 627, 629, 630, the facts parallel the case at bar. The court, in ruling the name of the informer must be disclosed, said: "The court has no quarrel with the Prohibition Department in its policy of guarding and keeping secret the name of an informant, with the idea of being thereby better enabled to enforce the Prohibition Law. The only question here is as to whether or not, when the matter is presented to a court for the purpose of seeking a determination of whether, under all the circumstances, there was probable cause, this element of those circumstances may remain undisclosed. It is scarcely an answer to the proposition that an agent testifies that his informant was a reliable person, and that he believed the information so given, unless the court sitting in judgment may have the right to determine whether, under all the circumstances, such information was reliable and the agent was justified in having such belief. A belief must or should rest upon a substantial basis. It is not a question of impugning the motives or doubting the honest belief of the agent in regard to the information which he may have received. It is simply requiring the witness to sustain his motives and his beliefs by all the evidence at his command. It is conceivable that a prohibition agent in the earnestness and eagerness of performing his duty might adopt very shadowy leads. But what is of greater consequence is that an ill-intentioned person might give an officer information which would in many instances lead to humiliation and vexation of the innocent automobile driver upon the public highway, and yet, with the failure to disclose the name of his informant, the prohibition agent would be safely ensconced behind his blanket testimony that he was informed by a reliable person."

I have reviewed all of the authorities of the federal courts in point on the question here for decision; including the case of Worthington v. Scribner, supra, the leading state case. They are not in harmony, and in two instances the Supreme Court has refused to pass on the question because not procedurally presented.

■■■ The Fourth Amendment protects the innocent and the guilty alike from unreasonable searches and seizures, and no arrest or search, without a warrant, is legal except on probable cause. "Probable cause" is synonymous with reasonable cause. It means a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that grounds exist for the search, or that the person sought has committed a felony, or such a state of facts as would lead a man to believe, or to entertain a strong suspicion, that property is possessed subject to forfeiture, or that a person has committed a felony. Probable cause does not mean prima facie evidence of guilt.

■■■ The search of an automobile without a warrant is authorized only when the officer has probable cause for such detention and search. If made under any other circumstances, the search is illegal and no prosecution can be supported on evidence thus obtained if the defendant seasonably objects to its introduction and promptly petitions for suppression.

■■■ In the case here under consideration, the officers making the search and arrest knew the reputation of one of the defendants arrested to be that of a dealer in illicit liquor, but did not know where the defendant would be or what kind of car he would be using on the day of the arrest, but for facts furnished him by the informer.

If the information of the informer was unreliable or he was unworthy of belief, the officer did not have probable cause to make either the search or the arrest. It follows that the court must have all the facts before it can properly determine whether the officer acted on reasonable grounds. If an officer should stop a peaceful, law-abiding citizen on the highway and search his car, subjecting him to humiliation and ridicule, and the offended citizen should seek redress by a suit for damages, surely no court would say the officer would be re-

lieved of responsibility by an answer that he was informed by a reliable person that the citizen was engaged in the illicit liquor traffic, but`he could not and would not disclose the name of his informer, thus preventing a fair and impartial investigation of his conduct. The certainty of the law is one of its greatest attributes. We cannot have one law applicable to an identical state of facts for the innocent and another for the guilty. The guilty may sometime escape under such a rule, but this need not follow if the officer be diligent, and likewise the secrets of state may be kept inviolate. The officer may use the facts furnished by the informer as a basis for his own investigation and discover sufficient facts to search or arrest without disclosing the source of his information.

In the case here, the officers could have pursued the automobile until, from the conduct of the driver or a disclosure of the contents of the car, sufficient facts could have been ascertained to have legally made the search and arrest. Under such a state of facts, it would have been immaterial as to who the informer was, or from what source the officer obtained his information.

█ Every accused person has the right to cross-examine on material facts every witness who testifies against him. This has been the rule ever since the law became certain and stabilized, and is a part of due process, which found its expression in the Fifth and Sixth Amendments to the Constitution. See Hale's History of the Common Law, page 145; Starkie on Evidence (2d Ed.) Vol. 1, page 160.

When the government calls a witness whose testimony is based in part on that of an informer, it subjects the witness to cross-examination and the informer to whatever peril may arise out of such cross-examination. It is a sound rule to keep secret information furnished to the state of violations of its laws, but this commendable public policy must yield to a higher, or at least an equal, right accorded to an accused to have a court investigate the facts material to his offense in a criminal prosecution, and sometimes the departments of government will be put to a choice of either foregoing a criminal prosecution or disclosing the source of material information necessary to the conduct of orderly judicial procedure.

█ The real ground of Agent Witherspoon's refusal to disclose the name of his informant was that he had been instructed by his superior officers to withhold such information. He should not be held in criminal contempt for failing to disclose the name of his informer. The better way to reach the question is to compel the United States to forego the use of the testimony by the agent favorable to it, unless willing to submit to a full cross-examination.

The question which the court is called upon to decide in this case involves important principles, and I am deciding it in such form that my decision may be promptly reviewed by a higher court, and a uniform rule of law established for the guidance of executive officers. The field of administrative law is necessarily growing with great rapidity under our complex civilization, and the courts should establish with certainty what information in the hands of governmental departments is closed to judicial scrutiny.

The motion for a new trial will be sustained and the evidence on which the indictment was based suppressed, and the indictment dismissed. Counsel will submit to the court findings of fact and conclusions of law conformable to this opinion.