## DANIEL v. UNITED STATES.

### No. 12120.

Circuit Court of Appeals, Eighth Circuit.

April 15, 1942.

Rehearing Denied May 7, 1942.

Sam Mandell and John W. Franciscus, both of Kansas City, Mo., for appellant.

Maurice M. Milligan, U. S. Atty., Richard K. Phelps and Otto Schmid, Asst. U. S. Attys., all of Kansas City, Mo., for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The only substantial question presented by this appeal is whether there was any competent evidence that the appellant on November 23, 1939, was attempting to transport intoxicating liquor from Missouri into Kansas in violation of the Liquor Enforcement Act of 1936, 27 U.S.C.A. § 223. The case was tried to the court without a jury, and the court found the appellant guilty and sentenced him. There are two valid assignments of error: one, that certain incompetent evidence was admitted; and, the other, that the court erred in failing to direct an acquittal. Since no jury was present, the reception of incompetent evidence would not be prejudicial, and the only concern of this Court is whether the judgment is supported by some competent evidence.

The facts are as follows: Officers of the Missouri Highway Patrol on November 23, 1939, arrested the appellant for the reckless driving of an Oldsmobile coupe several miles south of Lees Summit, Missouri. They found fifteen cases of intoxicating liquor in the car. They turned the appellant, the car and the liquor over to officers of the United States Alcohol Tax Unit. The appellant lived at Emporia, Kansas, and continued to live there until February, 1940. His family was there, his business was there, his social affiliations were there, and he paid personal taxes there. He had been employed as a fireman by the Santa Fe Railroad Company since 1923. Prior to July 25, 1940, the address where he was subject to call by the Railroad Company was 901 East Logan Street, Emporia, Kansas. During the fall of 1939, because of "force reduction," he was virtually out of employment by the Railroad Company, making no trips in November, 1939. The appellant purchased the liquor which was found in his car from the Country Club Distributing Co., Inc., at Alton, Illinois, on November 23, 1939. It was billed to B. H. Daniels, 1613 Chenevert, Houston, Texas. Appellant drove west with it as far as Lees Summit, Missouri, where he turned left on Highway 71, which runs south and is a few miles from the Kansas line. The appellant, by turning west at Harrisonville, Missouri, or Archie, Missouri, could reach Emporia, Kansas, which is south and west of the point where he was arrested. At the time of his arrest, the car which he was driving had Texas license plates. In the car were Kansas license plates. The car was

registered in appellant's name in Texas and in his wife's name in Kansas. He had a Kansas driver's license, and also a Texas driver's license issued November 2, 1939. He had a retail liquor dealer's tax stamp for the period commencing November 1, 1939, issued by the Collector for the First District of Texas to B. H. Daniel, 1613 Chenevert Street, Houston, Texas. The evidence shows that at the time of his arrest, the appellant stated to the arresting officer that the liquor had been purchased in Alton, Illinois, and that he was taking it to Houston, Texas; that it was the property of himself and his sister [sister-in-law] who lived in Houston, and was intended for their own use; that he had transported a similar load to Houston about a week before, and he and his sister [sister-in-law] had consumed it. To one of the investigators of the Alcohol Tax Unit he stated that he was taking the liquor to 1613 Chenevert Street, Houston, Texas; that his family lived at Emporia, Kansas; that he had formerly been engaged in the liquor business in Emporia, Kansas, and that his stamp expired on June 30, 1939; that he had been arrested on a bootlegging charge at Emporia, Kansas, but was discharged; that he had bought the liquor which was in the car from the Country Club Distributing Company and was taking it to Houston, Texas; that the reason he had bought it from that Company was that he could save $10 on a case; that he and his sister-in-law, Mrs. Frankie Reece, had bought this liquor together "and was consuming it." He said that he had bought about twelve cases of liquor about fifteen days before and had taken it to Houston, where he and his sister-in-law had consumed it, and that he had gone back for the fifteen cases to take down to Houston to drink. He was asked why, if he was going to consume the liquor, he bought a special tax stamp in Texas. He said he just wanted one. He said that Frankie Reece was his wife's sister, who worked in a mattress factory in Houston for $50 a month; that he was on his way to his sister-in-law's house; that they had consumed twelve cases in about a week's time and he was going back with fifteen more. One of the investigators of the Alcohol Tax Unit, who was a witness for the Government, testified that when he said to appellant that he did not believe his story and suggested that it might be better to tell the truth, the appellant replied that "it probably would be better to tell the truth, and that a lie would just get him into trouble, but he had to have some story, and that one story was about as good as another."

The Government produced Frankie Reece as a witness. She testified that she was the sister of appellant's wife; that appellant stayed at her house when in Houston; that he was there late in the fall of 1939 with his wife; that he stayed three days; that she (Frankie Reece) did not discuss with appellant any liquor transaction, but that he said he thought the liquor business was pretty good down there and that he might try to locate there; that he got a liquor dealer's stamp and was to stay at her house if he started a liquor business, "which he intended to do;" that he never brought any liquor to her house; that she never contributed to the purchase of liquor; that she never conducted any liquor business and that appellant never conducted a liquor business at her house; that she was with the appellant when he procured his Texas automobile license and his Texas driver's license; that at that time it was his intention to move to Texas; that in December, 1939, she visited the appellant and his wife at their home in Emporia; that they said they intended to move to Houston, "and this trouble [arrest] came up and they were going to wait until this was settled before they moved."

The appellant did not testify and offered no evidence to controvert the evidence of the Government.

█ The evidence shows that the appellant had on November 23, 1939, purchased at Alton, Illinois, the liquor which was found in his car, and had apparently driven due west across the state of Missouri, almost to the Kansas line. The route which he had evidently been following was a direct route from Alton, Illinois, to Emporia, Kansas. Lees Summit, Missouri, is a long way from any reasonably direct route from Alton, Illinois, to Houston, Texas. One who was transporting liquor from Alton to Houston would hardly go by way of Lees Summit. When this is considered in connection with the circumstances that appellant lived in Emporia, Kansas, that he was travelling toward Emporia, that his family was there, that his business was there, that he had almost reached the Kansas line when arrested, that his explanation for the pres-

ence of the liquor in his car and as to his destination was absurd, and that he was obviously using his Texas license plates and the fact that his sister-in-law lived in Texas as mere camouflage, it justified the conclusion reached by the court below. Compare Gregg v. United States, 8 Cir., 113 F.2d 687.

The judgment is affirmed.