UNITED STATES of America,
Libelant,

v.

ONE 1956 C H E V R O L E T PICKUP TRUCK, ½ Ton, Motor Number 0321467F56X, Serial Number 3A56-K016889, and a Quantity of Intoxicating Liquor, Defendant.

Civ. A. No. 1363.

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 22, 1957.

Chas. W. Atkinson, United States Atty., and Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Hugh M. Bland, Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

This case was tried to the Court without a jury on July 22, 1957. The parties stipulated that the Court might consider the evidence introduced in the case of United States v. Jessie Avo Workman, Criminal Action No. 254, Fayetteville Division, in determining the merits of the instant case.

Having considered the evidence in the said criminal case, together with the testimony of witness Carl Booth, interrogatories and answers thereto, and exhibits, the Court now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

1.

The plaintiff is the United States of America. The claimant, Dan Workman, is a citizen of Arkansas and resides near Evansville, Arkansas. This is a libel proceeding wherein the United States seeks a forfeiture of one 1956 Chevrolet pick-up truck.

**2.**

On February 13, 1957, several investigators of the Alcohol and Tobacco Tax Unit were assigned to observe the Ozark Tobacco and Liquor Store located in the State of Missouri on Highway 71, about one-half mile north of the Arkansas-Missouri border. The nearest Missouri town to the liquor store was Noel, and the nearest Arkansas town was Sulphur Springs.

Investigator Wilcid Breault was stationed in a field across the highway from the liquor store and was observing the store through field glasses. At about 9:45 p.m. he saw a green 1956 Chevrolet pickup truck approach the liquor store from the south on U. S. Highway 71 and stop at a fuel pump in front of the store. A man came out of the store to the truck, and there was some conversation between the driver and the man. Then the lights on the pickup were turned off, and the pickup proceeded around the north end of the liquor store to the back of the store and entered an attached garage.

About 10:30 p.m. the pickup was backed out of the garage and driven back to the front of the liquor store. There was another conversation between the man and the driver of the pickup. At that time the pickup was facing south.

Then the lights of the pickup were turned on and it was driven in a northerly direction on Highway 71. Investigator Breault relayed this information to the other investigators who were in the area.

Investigator Robert W. Glazer, who was nearby, turned off the lights on his vehicle and began following the pickup truck. The truck went about one-half mile north on Highway 71; turned west and went about two and one-half or three miles; and then turned south. At this point Investigator Glazer continued to go west and Investigator Glen Starrett, who in the meantime had driven up behind Investigator Glazer, turned south and continued to follow the pickup truck. Starrett followed the truck about one-half mile south; then one-fourth mile east; then one and one-half miles south.

All these roads except Highway 71 were rural dirt roads winding over hills.

In the meantime, the investigators had been keeping in radio contact, and Investigators Kenneth G. Presley and Roger G. Smith, who were in another vehicle, were intercepting the pickup truck.

Presley and Smith were driving north on the same road on which the pickup truck was being driven in a southerly direction. Upon seeing the lights of the pickup approaching, Presley and Smith turned on their car lights and the red light on the car, causing the pickup to stop.

Smith went up to the driver's side of the truck and noticed that the truck was being driven by a woman. The windows of the truck were up and she did not immediately lower them. Smith noticed something wrapped in brown paper on the floor of the cab. Presley had gone to the other side of the truck and shined his flashlight inside. He also noticed the brown package on the floor of the cab.

Presley then walked around to the driver's side and the woman finally rolled down the windows. The investigators asked the woman what her name was, and at first she said her name was Smith. Later she told them her real name was Workman. In the meantime, Investigator Starrett had driven up behind the pickup truck and had gotten out of his vehicle. He came up to the pickup and his recollection was that he had seen a brown package on the seat of the cab instead of on the floor.

The investigators searched the car and found 144 half pints and 72 pints of assorted whiskey, and 12 pints of gin, all with Missouri tax stamps.

The only material dispute in the evidence is the exact statement made by Mrs. Workman to the investigators with respect to where she was taking the liquor. She testified positively that she told them she was taking the liquor to her home which was near Stilwell, Oklahoma. The investigators testified that she told them she was taking the liquor

to Stilwell, Oklahoma. However, Investigator Presley also testified that she told him she lived outside of Stilwell, Oklahoma, near Evansville, Arkansas, and that there was some debate as to whether her house was in Arknsas or in Oklahoma.

3.

Mrs. Workman is the wife of the claimant herein, Dan Workman. Mr. and Mrs. Workman receive their mail in Evansville, Arkansas, and the taxes on the property on which their home is located are paid in Arkansas. Their home is located near Evansville, Arkansas, and about eight miles east of Stilwell, Oklahoma.

4.

Mrs. Workman has been convicted of violations of the State liquor laws in Evansville, in Washington County, Arkansas, and in Benton County, Arkansas.

5.

The claimant, Dan Workman, purchased the pickup truck in question on February 12, 1957, and is the owner of said vehicle.

6.

On March 18, 1957, at approximately 4:00 p.m., Carl Booth, an Investigator of the Alcohol and Tobacco Tax Unit, went to the home of the claimant and purchased some liquor from him. At that time Booth saw several bottles of liquor on the kitchen table.

At a later date Booth attempted to purchase more liquor but was told by the claimant, Dan Workman, that he was no longer selling liquor.

7.

Neither Dan Workman nor Mrs. Workman has ever paid the tax required of retail liquor dealers.

Conclusions of Law

1.

The Court has jurisdiction of the present action and the parties hereto.

2.

■ The officers in the instant case had knowledge of facts sufficient to lead a reasonably prudent person to believe that the truck was being used to violate the internal revenue laws of the United States, and therefore the search and seizure were proper. See, United States v. McCall, 10 Cir., 243 F.2d 858; United States v. Duane, D.C.Neb., 66 F.Supp. 459.

3.

■ The evidence is equally balanced as to whether the liquor was being transported to Evansville, Arkansas, or to Stilwell, Oklahoma, and therefore the plaintiff has failed to prove by a preponderance of the evidence that the liquor was being transported into the dry State of Oklahoma.

4.

■ The evidence conclusively shows, however, that the truck was being used in the operation of a retail liquor business in violation of 26 U.S.C.A. §§ 5121, 5122, and 5691. It follows that under the provisions of 26 U.S.C.A. § 7302, the truck is subject to forfeiture. Compare, United States v. One 1956 Dodge, D.C. W.D.Ark., 150 F.Supp. 503.

5.

■ It is also clear that the claimant, Dan Workman, knew that the truck was being used in the violation of laws of the United States relating to liquor, and that said claimant is not entitled to remission or mitigation of the forfeiture under the provisions of 18 U.S.C.A. § 3617.

Therefore the intervention of the claimant, Dan Workman, should be dismissed and the truck in question should be forfeited to the United States.

A judgment in accordance with the above should be entered.