## UNITED STATES v. VLECK.

### No. 7886.

District Court, D. Nebraska, Omaha Division.
Nov. 10, 1936.

Joseph T. Votova, Dist. Atty., and Fred G. Hawxby, Deputy Dist. Atty., both of Omaha, Neb., for the United States.

J. C. Kinsler, of Omaha, Neb., for defendant Joe Vleck.

I. J. Dunn, of Omaha, Neb., for defendant Leonard Johnson.

DONOHOE, District Judge.

The indictment charges the defendant in some six counts with unlawfully operating a distillery in his dwelling house in violation of the Revenue Law. The defendant has presented his motion to suppress the evidence seized by the officers upon the ground that the search and seizure were unlawful and were in violation of the defendant's constitutional rights under the Fourth and Fifth Amendments to the Constitution of the United States. The showing on the motion consists of the affidavits of the defendant and his wife, a transcript of the testimony of the officers before the United States Commissioner, and the affidavits of Officers Charles M. Davis and Frank C. Copeland.

There is some difficulty in reconciling some of the decisions of the courts dealing with the law applicable to a case like this. This is necessarily due to the fact that each case must depend upon its own state of facts and no two cases are exactly alike in that respect. The provisions of the Constitution are plain. The Fourth Amendment declares: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." And the Fifth Amendment, among other things, declares that: "No person shall be * * * compelled in any Criminal Case to be a witness against himself."

When undisputable evidence of guilt is obtained as a result of an unlawful search and seizure, there is the constant tendency of courts and law enforcement officers to search out some way of circumventing the constitutional guaranties in order that a known and established criminal may be punished for his crime. To detect this tendency, one need only study the many opinions that have been written by the courts. This tendency is to be decried. Law enforcement is not assisted by a denial of the defendant's constitutional rights. If we are to have respect for law, law enforcement must be within the law. This tendency

has been recognized and denounced by the Supreme Court of the United States in a number of cases. I quote the following from the opinion of Justice Sutherland, in the case of Byars v. United States, 273 U.S. 28, 32, 47 S.Ct. 248, 249, 71 L.Ed. 520: "The court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods. Constitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746; Gouled v. United States, 255 U.S. [298] 304, 41 S.Ct. 261 [65 L.Ed. 647], supra." Moreover, in the same opinion, I quote the following language on page 29 of 273 U.S., 47 S.Ct. 248, 71 L.Ed. 520: "Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed. Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Gouled v. United States, 255 U.S. 298, 306, 41 S.Ct. 261, 65 L.Ed. 647; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391, 40 S.Ct. 182, 64 L.Ed. 319 [24 A.L.R. 1426]; Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145 [51 A.L.R. 409]."

The whole difficulty seems to arise from the latitude allowed in the Fourth Amendment by the words "unreasonable searches and seizures." The general principles of the law are readily recognized, but the decisions turn at this point on the particular facts in each case. Generally speaking, a search warrant is required for a lawful search and seizure, although not necessarily in all cases, but the right to search without the warrant is the exception and not the rule. Searches and seizures without warrants are not in harmony with the traditions of our government, and while not all searches made as a result of a war-

rant are reasonable, still the formality required for the obtaining of a warrant insures a more reasonable search than in its absence.

■ In the case at bar, we are dealing with a search incident to an arrest, and in a case of a proper arrest, it is well recognized that a search without a warrant is justified. Likewise is the arrest by an officer without a warrant for a crime committed in his presence justified, and it is contended here that a crime was being committed in the presence of the officers, and that the arrest was made for that reason, and as an incident to the arrest, the search and seizure was made. To warrant the search and seizure, there must first be a lawful arrest. The search and seizure must be an incident to the arrest, and not the arrest a preliminary to the search and seizure. In other words, the arrest must have been made upon information then on hand that a crime was being committed, and a reasonable belief that the person arrested was the perpetrator of the crime. An arrest under such circumstances is justified without a warrant only for two reasons: First, to restrain and prevent further commission of the crime; and, second, to apprehend and prevent the absconding of the criminal. A search and seizure without a warrant is justified: (1) For the preservation of the evidence justifying the arrest without a warrant; and (2) for the purpose of establishing the crime, and securing the conviction and punishment of the criminal.

Now, there is a sharp distinction with reference to the necessity of a warrant for the search of an automobile or other moving vehicles, and a home or other structure. Note the following statement of the law by Chief Justice Taft, in the case of Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543, 39 A.L.R. 790: "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

We think, from an examination of the many decisions bearing directly on the questions that we now have involved, that the evidence, which as stated is distinctive in each case, should be examined and analyzed to determine:

(a) Did the officers invade the precincts of the home to make a lawful arrest?

(b) Was the search and seizure of the evidence supporting the arrest reasonable under the particular facts?

(c) Did the officers invade the precincts of the home for the purpose of obtaining evidence of the commission of a crime, and having obtained the evidence, was the arrest a consequence thereof?

In other words, was the search and seizure justified by the arrest, or was the arrest justified by the search and seizure?

The more recent cases of the Circuit Court of this circuit submitted to the court by counsel on either side, which have to do with the search of a home, are: Raniele v. United States (C.C.A.) 34 F.(2d) 877, 878; Wida v. United States (C.C.A.) 52 F.(2d) 424, 425; Leubbert v. United States (C.C.A.) 74 F.(2d) 357, 358.

In the Raniele Case, we quote the statement in the opinion: "The record clearly shows, and we understand the government concedes, that, apart from the evidence obtained by the search, there was no sufficient evidence to support a verdict of guilty." The facts, as stated, are as follows: A prohibition agent, accompanied by another man, went to the place where the defendant lived. The agent had been told that there was a still in a house in that village. The house was described to him but he did not know who resided there. The officer and a companion drove into an alley at the rear of the house, and from 60 to 80 feet distant therefrom. They alighted, entered the yard, and approached the house. Neither the officer nor his companion had a search warrant, nor did they have any information on which a search warrant could be obtained. When within 30 or 40 feet of the house, they smelled an odor which they recognized as the odor of fermenting mash. Up to that point, they had detected no odor. As they approached the house, the odor became stronger. They went to the back door of the house, which was open, and the officer rapped. The wife of the defendant came to the door and upon inquiry stated

she was the woman of the house. The officer told her he was a federal officer and asked where her husband was. She said he was in the basement. The officer asked her how to get down there, and she pointed out the way. The officer went downstairs to the basement. His companion remained outside the house. When the officer reached the foot of the stairs, he saw a small room into which the stairs led, and an open, wide doorway leading into a larger room. He saw in the latter room two large stills and other apparatus and the defendant and four other men standing by the doorway. The stills were in operation. ·He also saw some of the mash. The officer approached the men and asked who was the boss of the place, and the defendant said he was. The officer then placed him under·arrest and called his companion down into the basement. The court held that the search and seizure were illegal, and the evidence obtained was suppressed.

The facts in the Wida Case, were: Two government agents had information and complaints that liquor was being distilled at a farm house owned by the defendant and went · there to investigate. As they approached the house, they smelled the odor of mash, which they recognized as that made for the purpose of distilling spirits. They went to the door where Wida appeared. Whereupon, the agents asked him his name, and then told him that they were federal officers, and said: "You are under arrest for having fermenting mash in your possession." One of them asked him where his still was, and Wida motioned toward the basement, and said: "It is in the basement." Wida stated that the still was his, and that he had been operating it for the past month, cooking out an average of twenty gallons of moonshine whisky a day. He said he was not selling it himself, but that there was another man who sold it, coming about twice a week when he brought sugar and other materials for the distillery and took away the moonshine whisky. One of the agents found a still in operation in the basement, and barrels containing fifteen hundred gallons of fermenting mash, some moonshine whisky, empty kegs, and other paraphernalia. I quote the following from the opinion by Senior Circuit Judge Stone: "The validity of this arrest is beyond successful challenge. Before going to this place, the officers had received information and complaints that Wida had a still in operation at his home and they went about one

hundred and twenty miles to investigate the accuracy of this information. They had a right to go to the house for this purpose, and when they arrived there, and before entering the house, they received unmistakable evidence, through the strong odor of the fermenting mash, that their information was correct. Immediately upon ascertaining the identity of the appellant Wida, they made the arrest." I quote the further statement from the opinion, which evidently was intended by the court for the guidance of federal officers in the performance of their duties: "We hold: (1) That where officers have reasonable information that a felony is being committed at a certain place they are justified in making a proper investigation at that place to ascertain whether such information is correct; (2) that if, while on such premises for that purpose, they are apprised by their senses that the felony in question is then being committed in their presence, they have a right to arrest the suspected person for the commission of that felony; (3) that as an incident to such arrest, they have the right at the time to make a search of the immediate premises for other evidence of the commission of that felony.".

And in the Leubbert Case, which is the most recent case called to our attention, we gather from the opinion the facts to be: A deputy collector of internal revenue accompanied a United States marshal to aid him in the service of a warrant upon one Otto Meyer, who was supposed to live at that address. On arrival, they were informed that Meyer no longer resided there, but that a family living close by had lived there for several years and might be able to furnish them with the information they desired. The collector then proceeded to the address given, and observed the lady of the house at the rear of it, and went back to inquire about Meyer. He passed within a few feet of the south wall of the house in which the defendant Fennewald lived. While making his inquiry he smelled the odor of hot whisky coming from the basement of the Fennewald house, which was only a few feet distant; heard liquid being poured from a can; heard a voice in conversation which he recognized as the voice of the defendant, Fennewald, whom he had arrested before for a violation of the prohibition act; and heard the roar of burners. The revenue officer testified that he had been receiving information for some time prior that Fennewald was operating a

still at that address. He thereupon approached the basement door, announced to those inside that he was a revenue officer, and forced the door open and entered the basement. He heard men running upstairs and gave pursuit. About half a block distant he caught the defendant Leubbert, declared him under arrest, and took him back to Fennewald's house, and in the absence of Fennewald, who had not been apprehended, conducted the search of Fennewald's residence. The search revealed the liquor described in the indictment, together with the utensils used. Fennewald was not arrested on that date, but surrendered himself later. Note the following language of Judge Woodrough in the opinion: "We think the action of the officers in entering the residence of Edward Fennewald without a search warrant was unjustified and illegal. The smell and the sounds coming to the olfactories and the ears of the officers probably gave them reasonable cause to believe that persons within the house had whisky and were pouring it from one container to another, possibly the additional fact that whisky was being heated. But there was no commission of crime in their presence such as would justify them in breaking into the dwelling house. The motion to suppress should have been sustained."

Coming now to the facts in the case which we are considering, and stating only the evidence on behalf of the government: It appears that Mr. Davis, the revenue officer, had information that there was a still being operated in one of the two houses on Johnson's farm at the intersection or the corner of Seventy-Second and Grover streets; that on the 25th of May, in company with Investigator Copeland, he went to the vicinity of the place. They walked along the north side of the premises, probably about 300 feet. When he got west of the house, he could smell the odor of fermenting mash, then he went over into the orchard and could smell the odor of fermenting mash. Three days later, on May 28, 1935, they again went to the house, and as they walked along they got the odor of fermenting mash. They walked up close to the house. They detected the odor coming from the large two-story house; there was a light downstairs and they saw Mrs. Vleck sitting at the table in the living room reading. Then on the night of the 30th of May, 1935, the officers went down south of the place. Copeland came up to the house and noticed the odor of fermenting mash.

Then on the morning of June 3, 1935, these officers, in company with Investigator Cook, drove north along Seventy-Second street and came up to the driveway going in the place. They could see Mrs. Vleck coming out of the door of the kitchen. They drove into the yard and smelled the odor of fermenting mash. The kitchen door was open. Mr. Davis told her who he was and what he was there for and "placed her under arrest." He stated: "I stepped up on the porch and Joe Vleck came out of the basement into the kitchen. I spoke to him: I said, 'I guess you know me,' he said, 'Yes, I know you.'. I said, 'you are under arrest.' I said, 'where is the still?' He said, 'down in the basement, come on down.' We went down in the basement where they was an 85 gallon still in operation and twelve gallon jars. * * * I told Mrs. Vleck she didn't need to report. I had got Joe."

On cross-examination, Mr. Davis testified: That Mrs. Vleck came out of the kitchen door as he came up and met him right there—"I saw her on the porch when I walked up"; that when he arrested Mrs. Vleck, he was on the back porch. She came out of the kitchen door. "There was a screen door, as I recall it, and started to come out on the porch. She was on the porch then when I stepped up." Mr. Davis specifically stated in answer to the following question: "What did you arrest Mrs. Vleck for—the defendant's wife?" He answered: "She was the first person that came out the door after I was there on the place, so I placed her under arrest, not knowing whether Joe was there, thought she was in charge—she seemed to be in charge of the place. I asked her if she lived there and she said yes." Question: "What offense did you charge her with?" He answered: "Having fermented mash. Before I got through making my notes about her, Joe came out of the basement, when I placed him under arrest." I quote the following from the affidavit of Officer Davis: "And as affiant approached the kitchen door, Mrs. Vleck came from the house; and affiant informed her he was a federal officer and placed her under arrest for having fermenting mash in her possession. While standing near the open kitchen door, affiant saw the defendant Joe Vleck enter the kitchen from the basement and placed him under arrest, and incident to said arrest, the premises were searched." From this evidence, it clearly appears that all of the evidence of the illegal still, and the oper-

ation thereof, that the officers had at the time they approached the precincts of the dwelling house, was in their possession many days before. None of the basic reasons for an arrest without a warrant were present, and without the evidence which was seized, as a result of the search, the officers had no evidence that would warrant a conviction.

As a basis for the search and seizure, there must be a lawful arrest. The right to enter the precincts of a home must be incidental only to a lawful arrest, and not for the purpose of securing evidence upon which to justify the arrest. There is nothing to indicate that there was a lawful arrest of Mrs. Vleck. The action of the officer in connection therewith clearly indicates that his arrest of Mrs. Vleck was merely as a preliminary upon which to base the right to enter the home. The arrest of the defendant was made in the home, according to this evidence, and was made, as we believe this evidence clearly indicates, after there was an unlawful entry into and upon the precincts of the home.

We think the action of the officers in entering the residence of the defendant without a search warrant was unjustified and illegal, and in this we feel fortified by the holdings of the Circuit Court of Appeals in the Leubbert Case, supra.

The motion to suppress will therefore be sustained.