**UNITED STATES of America,**
v.
**William Oliver TURNER.**
No. 23025.

United States District Court,
D. Maryland, Criminal Division.
Dec. 2, 1954.

**350**

George Cochran Doub, **U. S.** Atty., William F. Mosner, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

· Walter C. Herlihy, Baltimore, Md., for defendant.

CHESNUT, District Judge.

The defendant has been indicted on one count for removing and in the second count for concealing 23½ gallons of nontax-paid distilled spirits in a certain Ford truck, Maryland license No. 1629 EK, under 26 U.S.C.A. § 2913. On August 14, 1954 the Ford truck driven by the defendant was stopped in the vicinity of Accokeek, Prince George's County, Maryland, by Wilton Kiefer and other investigators of the Alcohol Tax Unit, when the truck was searched and the liquor discovered, confiscated and destroyed. The officers did not have a search warrant.

Prior to the assignment of the case for trial in this court the defendant filed a motion for the return of the seized property and for the suppression of the evidence incident to the seizure. Of course the liquor itself cannot be returned (nor should it be if it had not been destroyed, Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663), but the question to be decided is whether the incidental evidence should be suppressed on the ground that the search and seizure was contrary to the Fourth Amendment. The facts developed in the evidence submitted on the hearing of the motion can be shortly stated.

About a week prior to the search Kiefer had been told by some one whom he described as a reliable informer, that the defendant Turner was again running nontax-paid liquor to Washington in a described Ford panel truck, license No. 1629 EK. Kiefer knew Turner because about four years previously he had arrested Turner for internal revenue liquor violations and, in consequence thereof, he had been convicted in this court. On the day of the search and seizure about 5 a. m., just at daybreak, Kiefer and three other investigators were in the vicinity of Accokeek, Prince George's County, Maryland, in relation to an unregistered still which had been in operation in that neighborhood. At the time Kiefer noticed a truck of the stated description passing on the public highway and noted its particular license number. The investigators then followed in their car and overtook the truck and required it to stop. Both Turner, the driver of the truck who had not previously been recognized by Kiefer, and the investigators got out of their respective vehicles. Kiefer then recognized Turner who, he said, also seemed to recognize him, and without further material conversation and without any consent by Turner, Kiefer opened the rear doors of the truck and after removing the cover from the liquor, seized it. In recent years a number of unregistered stills have been found in that section of the State and there has been much transportation therefrom to Washington. On these facts the question is whether the search and seizure was illegal and if so, the evidence obtained thereby should be suppressed at any trial of the case.

The Fourth Amendment is a vital principle of our federal constitutional law and thoroughly familiar to judges and lawyers. Nevertheless its phraseology can nearly always be profitably re-read in connection with the particular case to be decided.

It reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to

be searched, and the persons or things to be seized."

██ It seems to be generally agreed that the Amendment applies most importantly to searches of dwelling houses, and with less strictness in reference to fast moving automobiles which, by almost common knowledge, are now frequently used for violation or evasion of the internal revenue laws of the United States. But searches of moving vehicles are not entirely without the protection of the 4th Amendment. It is necessary in each case to balance on the one hand the importance of enforcement of the revenue laws of the United States, and on the other hand the fundamental purposes of the Amendment for the security of persons and their effects even when in fast moving vehicles. And of course the success of the search, as in the instant case, does not justify the search if otherwise illegal. It is quite evident from recent decisions of the Supreme Court in which there have been numerous dissents, that it is frequently hard to draw a broad line defining the boundary between illegal searches and those based upon probable cause. All agree that to make a search without a warrant valid as against the protection of the 4th Amendment, the officer making the search must have knowledge of such facts as would lead a reasonably prudent man to believe that there was substantial ground for thinking the law was being violated by the persons whose property or vehicle is searched without a warrant. Thus in Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, where the search and seizure were held illegal, four Justices dissented, and in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, where the search of a moving vehicle was held legal, three Justices dissented, including Mr. Justice Murphy who wrote the opinion for the court in the Trupiano case, and in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, where the search was held legal, three Justices dissented (Mr. Justice Douglas not participating in the case) and the former

case of Trupiano v. United States was overruled in part.

██ In the instant case it is to be noted from the facts stated that the pursuit of the defendant's truck was begun merely on information received by Kiefer that the defendant was again transporting untax-paid liquor in a truck having a specified license number. The information did not state the time or place where the vehicle could be found while engaging in illegal activities. Upon pursuit begun it does not appear that the driver made any effort to escape either before or after his truck was stopped by the officers. Nor was the defendant recognized by Kiefer as the driver until after he and the defendant had alighted from their respective vehicles. At first Kiefer stated as the basis for stopping the defendant's truck that the officers had been looking for suspected bank robbers as such a robbery had shortly theretofore occurred in the vicinity. Kiefer explained that this statement was because, not knowing at the time that the search would be successful, he did not wish to disclose to the driver that he was looking for the particular truck. Upon recognizing the defendant Turner as a former violator of the revenue laws, he proceeded at once to open the rear of the truck and removed a covering which concealed the nontax-paid liquor. There was nothing about the appearance of the truck nor anything said or done by Turner before the search and seizure, the only basis for which was the hearsay information received a week previously.

On these facts, after some extended consideration of the particular subject matter and after again reviewing many of the more applicable authoritative cases, I have concluded that there was not legally probable cause for the search and seizure.

██ The decided cases are far too numerous to warrant extended review, but I have particularly considered, in addition to those already mentioned, all the cases cited in support of the con-

tention by the Assistant United States Attorney. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, are probably the most important and authoritative cases dealing with the particular subject matter of search of automobiles for contraband liquor. I have also considered Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629; Nichols v. United States, 8 Cir., 176 F.2d 431; Pepper v. United States, 8 Cir., 176 F.2d 433; Bradford v. United States, 6 Cir., 194 F.2d 168; United States v. Lerner, D.C.Md., 35 F. Supp. 271 and United States v. Murray, D.C.Md., 51 F.2d 516, in which, on the particular facts, the search was held good. But it will be found from the facts in those cases that in addition to the information from reliable sources, the officer making the search had personal information based on observation of the particular automobile or of the contemporaneous activities of the defendant which, taken all together, constituted probable cause for the search. To the same effect is the most recent case upon the subject in the Court of Appeals of this Fourth Circuit which I have noted. Godette v. United States, 199 F.2d 331. In a much earlier case in the Fourth Circuit, Milam v. United States, 296 F. 629, information by telephone from a reliable source miles away that a certain described automobile containing illegal liquor, traveling on a particular route which would shortly pass the officers receiving the information, was held probable cause for stopping and searching the automobile when it arrived in accordance with the information, although when searched it was found not to contain illegal liquor but 18 Chinese illegally admitted into the country. In my opinion the proper rule to be deduced from many, if not most, of the well considered cases upon the subject is that, while hearsay information only is not of itself sufficient to justify the search of a moving vehicle without a search warrant, reliable in-

formation of illegal activities is a very important factor when given to an arresting officer who from his own observation of the vehicle or its driver has knowledge sufficient to warrant a reasonable belief that a violation of law is occurring in his presence. In a succinct treatise on the Law of Search and Seizure by Ernest W. Machen, Jr., Asst. Director of the Institute of Government at the University of North Carolina, it is said by the author on page 51—

"Tips from reliable informers, if backed up by some personal knowledge on the part of the officer, as in a case where he has checked his information against actual conditions, may be very valuable. Some cases seem to go so far as to say a search may be made on information which the officers believe to be reliable as distinguished from that which they know to be true from their own knowledge, or from information which they have checked. But the general rule seems to be that tips must be supplemented by further facts before they can be relied on. It is uncertain whether names of informers must be disclosed. It has been said that 'public policy forbids disclosure of an informer's identity unless essential to the defense'. Yet searches are generally not approved if there is no other evidence than a tip by an undisclosed informer."

And in Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151, dealing with the search of an automobile for illegal transportation of liquor, it was said in the opinion by Mr. Justice McReynolds—

"In the circumstances the source of the information which caused him to be observed was unimportant to petitioner's defense. The legality of the officers' action does not depend upon the credibility of something told but upon what they saw and heard—what took place in their presence. Justification is not sought because of honest belief

based upon credible information as in United States v. Blich, D.C., 45 F.2d 627."

For these reasons I have concluded that the motion to suppress the evidence incidental to the search must be granted and it will be so ordered.