**Percy McINTIRE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 4948.**

United States Court of Appeals, Tenth Circuit.

Dec. 13, 1954.

Rehearing Denied Dec. 27, 1954.

Writ of Certiorari Denied

Feb. 28, 1955.

See 75 S.Ct. 442.

Douglas Garrett, Muskogee, Okl. (Claude Garrett and Cleon A. Summers, Muskogee, Okl., were with him on the , brief), for appellant.

Harry G. Fender, Asst. U. S. Atty., Muskogee, Okl. (Frank D. McSherry, U. S. Atty., Muskogee, Okl., and Paul M. Brewer, Asst. U. S. Atty., Wewoka, Okl., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

McIntire was charged by an indictment containing five counts. The first count charged that McIntire and five others had in their possession and custody and under their control an unregistered still and distilling apparatus for the production of spiritous liquors, in violation of 26 U.S.C.A. §. 2810. The second count charged the same defendants with carrying on the business of a distiller of spiritous liquors without having given the bond required by 26. U.S.C.A. § 2814. The third count charged the same defendants with working at a distillery for the production of spir-

itous liquors upon which no sign bearing the words "Registered Distillery" was posted and kept, as required by 26 U.S.C.A. § 2831. The fourth count charged the same defendants with making fermented mash fit for distillation and for the production of spiritous liquors, on premises other than a distillery duly authorized by law, in violation of 26 U.S.C.A. § 2834. The fifth count charged the same defendants with possession of 16 gallons of distilled spirits, the immediate container of which did not have affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing the payment of all internal revenue taxes imposed on such spirits, in violation of 26 U.S.C.A. § 2803.

McIntire was convicted and sentenced and has appealed.

On February 19, 1953, Sypert, Sheriff, and Marlow and Rector, Deputy Sheriffs of Muskogee County, Oklahoma, and Etchison and Green, officers of the City Police Department of Muskogee, Oklahoma, seized a large distillery in a farm house located west of Muskogee, Oklahoma. The farm house contained five downstairs rooms, one upstairs room, and a front porch. It was situated approximately one-fourth mile from U. S. Highway 62, near a section line road leading from such highway. From such section line road a side road extended to the still house, a distance of approximately 100 yards. The distillery was set up and operating at the time of seizure. It had a daily capacity of approximately 110 gallons of distilled spirits. At the still house there were 77 barrels containing approximately 4200 gallons of mash and 13 gallons of whisky in unstamped containers. Two of the defendants charged in the indictment, Ellison and Mitchell, were arrested by the officers at the time of the seizure. Mitchell told the officers that other persons were involved, but refused to give their names. Green took Ellison and Mitchell to the Muskogee County Jail and then returned to the still house. The officers remained at the still house.

About 10:30 p. m., February 19, 1953, the officers saw an automobile stop on the U. S. Highway, near its junction with the section line road leading to the still house. The driver of the automobile, later ascertained to be McIntire, turned off the headlights of the automobile, then turned into the section line road, proceeded to the side road leading to the still house, turned into the side road and approached the still house. Upon reaching the still house McIntire backed the automobile, which was a Navy surplus pick-up truck, sometimes called a Jeep, up to the front porch. The officers heard him drop the end-gate and commence unloading cartons from the Jeep onto the front porch. McIntire then started to open the door into the still house from the front porch. Thereupon, the officers arrested McIntire. Two of the cartons which had been unloaded onto the front porch contained empty gallon glass jugs. The officers also observed several additional cartons in the Jeep which contained empty gallon glass jugs. Such jugs are commonly used as containers for illicit whisky.

McIntire interposed a motion to suppress the evidence, that is, the cartons and the gallon jugs which the officers seized following the arrest of McIntire, on the ground that they were obtained through an unlawful search and seizure of the Jeep. The trial court overruled the motion to suppress.

At the trial McIntire made an offer of additional evidence to establish that Officers Etchison and Green had on several occasions found stills in the vicinity of Muskogee, and had turned the cases over to Federal officers for prosecution. The trial court rejected the offer on the ground it presented a collateral issue, and that it should not stop the orderly trial of the case to inquire into such issue.

It is well settled that a search without a search warrant is justifiable where it is incident to a lawful arrest, if it is reasonable and made in good faith; and that a seizure on such a search of

evidence related to the crime and instruments of its commission is permissible.[1]

■■■■ A peace officer may arrest without a warrant one believed by the officer, upon reasonable cause, to have been guilty of a felony, and he may arrest without a warrant one guilty of a misdemeanor, if committed in his presence.[2] In order to warrant an arrest without a warrant of one believed by the officer to have been guilty of a felony, the facts and circumstances within the knowledge of the officer, or of which he had reasonable, trustworthy information, must be sufficient to warrant a man of reasonable caution in believing that the offense had been committed.[3]

■■■■ Here, the officers knew that the distillation of spiritous liquors was being unlawfully conducted at the still house. They had reasonable cause to believe that persons other than those arrested at the time of the seizure of the distilling apparatus were involved. McIntire stealthily approached the still house on a dark night with the lights of his car turned off, backed up to the front porch, unloaded part of the cartons from the Jeep, and then started to open the door and enter the still house. The still house was used solely for the carrying on of the unlawful distilling operations. It was a reasonable deduction, under the circumstances, that the gallon jugs brought to the still house and partly unloaded onto the front porch were to be used in connection with such unlawful distilling operations. The officers had reasonable cause to believe from those facts and circumstances that McIntire, in bringing the gallon jugs to the still house and unloading them onto the front porch, was then aiding and assisting in the unlawful operation of the distilling of spiritous liquors.

The manufacture of the mash, the possession of the distilling apparatus, and the manufacture of distilled spirits were misdemeanors under the laws of Oklahoma, 37 Okl.St.Ann., §§ 51, 52, 53 and 57.

In Oklahoma all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, or whether they directly commit the act constituting the offense, or aid and abet in its commission, are principals. 21 Okl.St.Ann. § 172.

There can be no doubt under the law of Oklahoma that the Sheriff, Deputy Sheriff, and police officers were authorized to arrest McIntire.[4]

---

1. Harris v. United States, 331 U.S. 145, 151, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653; United States v. Braggs, 10 Cir., 189 F.2d 367, 369; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145.

In the case last cited the court said: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted."

2. Carroll v. United States, 267 U.S. 132, 156, 167, 45 S.Ct. 280, 69 L.Ed. 543.

3. Carroll v. United States, 267 U.S. 132, 156, 157, 45 S.Ct. 280, 69 L.Ed. 543.

4. 22 Okl.St.Ann. § 196 provides:
"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence."

22 Okl.St.Ann. § 198 provides:

"He may also at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest though it afterward appear that the felony had not been committed."

In United States v. Braggs, 10 Cir., 189 F.2d 367, 368 we said:

"11 Okl.St.Ann. § 574 provides that a chief of police shall at all times have power to make an arrest without process in all cases where an offense against the laws of the state or of the city shall be committed, or attempted to be committed, in his presence. 11 Okl.St.Ann. § 575 provides that policemen of a city shall have the same power to arrest offenders against the laws of the state or of the city, where the offense is committed, or

The search and seizure of the cartons on the porch and in the Jeep was an incident to a lawful arrest and was reasonable and made in good faith. Accordingly, we conclude that the search and seizure was lawful and that the motion to suppress was properly denied. Hence, it becomes unnecessary to determine whether, under the facts, there was cooperation in the search and seizure, among state and city officers and Federal officers, or that there was a general understanding and common practice among the state, city and Federal officers that

attempted to be committed, in their presence. In Oklahoma a policeman is a state, rather than a city officer."

the Federal officers would adopt and prosecute in the Federal courts offenses discovered by the state and city officers.[5]

The court denied McIntire's motions for a judgment of acquittal, made at the close of the Government's testimony and at the close of all the evidence in the case. While the denial of those motions is included in McIntire's statement of points, it is not argued in his brief. Suffice it to say that there was ample evidence to sustain the verdicts of guilty.

Affirmed.

5. See United States v. Butler, 10 Cir., 156 F.2d 897.