**UNITED STATES of America, Appellant,**

v.

**John Kenneth McCALL, Appellee.**

**No. 5482.**

United States Court of Appeals
Tenth Circuit.

April 25, 1957.

Kenneth M. Nohe, Asst. U. S. Atty., Wichita, Kan. (William C. Farmer, U. S. Atty., Topeka, Kan., was with him on the brief), for appellant.

Charles H. Apt, Iola, Kan. (Frederick G. Apt and Apt & Immel, Iola, Kan., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

BRATTON, Chief Judge.

Six investigators for the Alcohol and Tobacco Tax Division of the Treasury Department, acting without a search warrant, cooperated in searching and seizing from John Kenneth McCall an automobile together with a cargo of intoxicating liquor on a highway in Kansas. An indictment returned in the United States Court for Kansas charged that McCall attempted to introduce and transport the liquor into Oklahoma where such liquor was unlawful except for certain specified purposes; and the United States filed in the same court a libel of information seeking condemnation and forfeiture of the automobile and liquor upon the ground that at the time of the search and seizure McCall was using the automobile in the transportation of the liquor in an attempt to import it into Oklahoma in violation of law. Separate motions were filed in the two cases to suppress the evidence obtained by the search and seizure and to compel return of the seized property. The two cases were consolidated for the purpose of hearing the motions. After hearing, the court found that the investigators did not have probable cause to search the automobile without a search warrant; the evidence was suppressed; return of the seized property was ordered; and the proceeding in libel was dismissed. The Government appealed.

The crucial question upon which the case turns is whether the investigators had probable cause to search the automobile without a search warrant. Probable cause to make a search of an automobile on a highway without a search warrant depends upon the particular facts and circumstances. But it may be said in general terms that probable cause exists where the facts and circumstances, together with the reasonable inferences fairly to be drawn from them, are such as would lead a reasonably intelligent and prudent person to conclude that there is good ground to believe that the law is being violated. Carroll v. United States, 267 U.S. 132, 45

S.Ct. 280, 69 L.Ed. 543; Pearson v. United States, 10 Cir., 150 F.2d 219; United States v. One 1941 Oldsmobile Sedan, 10 Cir., 158 F.2d 818.

■ Guided by the light which this general rule affords, we come to the evidence adduced upon the hearing on the motions to suppress the evidence and compel return of the seized property. Evidence was adduced which tended to establish these facts and circumstances. James Snyder, Jackson E. Dougdale, John F. Smith, Robert W. Glaser, James V. Leyton, and Glenn Starrett, were investigators for the Alcohol and Tobacco Tax Division of the Treasury Department. They had information from official records that the C. O. Adams Liquor Store, located on the south side of a highway at a point about a mile east of Lamar, Missouri, a town with a population of approximately thirty-five hundred, was buying excessive quantities of whiskey. They had information that it was buying hundreds of cases of whiskey a month. They had information that during January, 1956, it purchased about eleven hundred cases of whiskey. And they had information that at the premises whiskey was being loaded into automobiles from Oklahoma for transportation into Oklahoma. Based upon the information which they had, the investigators, on February 9, 1956, placed the liquor store under surveillance. Snyder took a position in a field about fifty yards from the liquor store. He was equipped with a pair of binoculars, specially made for use at night, and with a walkie-talkie radio transmitter and receiver. The other investigators were using radio equipped automobiles. At about ten o'clock at night, Snyder saw an automobile coming east on the highway toward the liquor store. As it approached the liquor store, the automobile made a right hand turn off the highway, went around the store, and thence to the rear of the building. As the automobile went in behind the building, the flood light at the rear of the building was turned off. There was a garage at the rear of the liquor store. After the flood light went off, Snyder heard sounds which indicated that the garage door opened, that the automobile entered the garage, and that the garage door closed. Immediately thereafter, the flood light at the rear of the liquor store came on and the automobile was not in sight. After the flood light came on again and while the automobile was out of sight, Snyder heard coming from the direction of the garage clinking sound of glass hitting glass and also sound indicating that boxes were being tossed or kicked around or moved inside the garage. At just before twelve o'clock, the flood light went off again, and Snyder heard noise which indicated that the garage door was being opened and the engine of the automobile started; and with the use of the field glasses, he saw the automobile come out of the garage. In leaving the premises, the automobile went around to the east side of the liquor store. As it approached the highway, the headlights were turned off. Upon reaching the highway, the automobile turned west, the direction from which it had come. After moving ten or fifteen yards on the highway, the headlights were turned on. Snyder observed the automobile as it went along the highway for a distance of approximately a quarter of a mile and then he lost sight of it. While observing it, he noticed that it was "sitting awfully low in back * * * sitting lower than normal." Snyder radioed his observations to the other investigators, and he started to follow the automobile. Dougdale was in a government car in the vicinity of the liquor store. He saw the automobile in question come from the west; saw it turn into the premises of the liquor store; saw it roll to a stop; saw the flood light turned off; saw the automobile leave the premises; saw it enter the highway and turn west; and saw its headlights come on after it entered the highway. Dougdale radioed to the other investigators ahead everything which Snyder had told him about what was going on. And about fifteen minutes after the automobile left the premises of the liquor store, he started to follow it.

Smith was stationed about half a block from the highway at a point further west. He first saw the automobile as it was proceeding on the highway in front of his position. The automobile "appeared to be heavily loaded—I could see by the way it was riding in the back." As it crossed a dip in the highway, the rear end sagged way down and came up very slowly. After the automobile passed, Smith radioed the other investigators that it had passed his position, and he started to follow it. Glaser and Leyton were still further down the highway toward the Missouri-Kansas line. They had the information given them in such messages from Snyder, Dougdale, and Smith. They saw the automobile coming on the highway; and after it passed, they started to follow it. They stopped the automobile after it crossed the line into Kansas and was going in the general direction of Oklahoma. Packages wrapped in brown paper and having the appearance of lugs of whiskey were lying in the front seat of the automobile next to McCall, were visible from the outside, and were seen by one of the investigators. In the rear of the automobile, there was a cloth tight covering practically level with the rear of the front seat. The point at which the automobile was stopped was approximately thirty-five or forty miles from the line of Oklahoma. McCall was placed under arrest, the automobile was searched, the liquor was found, and the automobile and liquor were seized. All of these facts and circumstances must be considered together as integral parts of the whole. Each must be given the weight and significance to which it reasonably is entitled. Considered in that manner, we are of the view that such facts and circumstances were sufficient to lead a reasonably intelligent, prudent, and cautious person to believe in good faith that intoxicating liquor was being transported in the automobile for destination in Oklahoma; and that therefore the investigators had probable cause to make the search without a search warrant. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Fowler v. United States, 10 Cir., 239 F. 2d 93.

An effort is made to distinguish the Brinegar case from this one upon the ground that there the officers knew and recognized the defendant, one of them had arrested him on a previous occasion, they knew him to be a liquor hauler, and he attempted to outrun them, while here the name or identity of the driver was not known until the automobile was stopped and there was no attempt to outrun the investigators. But these differences are not decisive. And a further effort is made to distinguish the Brinegar case upon the additional ground that there the defendant made a certain statement or admission concerning the quantity of liquor in the automobile before the search began, while here a similar statement or admission by McCall was made after the search had begun. In both the Brinegar and Fowler cases, the defendant made a statement or admission concerning the quantity of liquor in the automobile before the search began. In this case, the evidence was in conflict in respect to whether a statement or admission by McCall respecting the quantity of liquor in the automobile was made before or after the search began. Two investigators testified that it was made before the search began. One testified that it was made after the search had begun. But that difference between the Brinegar and Fowler cases and this one is not decisive. Completely eliminating from consideration all of the evidence relating to the statement or admission by McCall, the facts and circumstances established were sufficient to constitute probable cause for the search without a search warrant under the tests blueprinted in the Brinegar and Fowler cases.

The order suppressing the evidence and requiring return of the seized property is vacated, the judgment dismissing the action is reversed, and the cause is remanded.