**James Alonzo DRAPER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 5593.**

United States Court of Appeals
Tenth Circuit.

Sept. 12, 1957.

Rehearing Denied Oct. 23, 1957.

Huxman, Circuit Judge, dissented.

John J. Althoff, Greeley, Colo., for appellant.

John S. Pfeiffer, Asst. U. S. Atty., Denver, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

BRATTON, Chief Judge.

The indictment in this case charged that appellant fraudulently and knowingly received, concealed, sold, and facilitated the transportation and concealment of 865 grains of heroin, after it had been imported into the United States, knowing it to have been brought in contrary to law. Appellant seasonably filed a motion to suppress as evidence two envelopes, certain heroin in the envelopes, and a hypodermic syringe, upon the ground that they had been taken from him by means of an unlawful search and seizure. A hearing was had upon the motion, at which evidence was adduced tending to establish these facts. John W. Marsh was an agent of the Bureau of Narcotics in Denver, Colorado. For approximately six months prior to September 3, 1956, James A. Hereford acted as a special employee for the Bureau in Denver. During that time, he furnished information to Marsh concerning violations of the Narcotics Act, for which he was paid small sums of money; and the information furnished was always found to be reliable. On September 3, Hereford informed Marsh that appellant lived upstairs at a certain address in Denver; and that he was peddling heroin to several addicts in Denver. Four days later, on September 7, Hereford informed Marsh that appellant had gone to Chicago the previous day; that he had gone by train; that he was going to bring back approximately three ounces of heroin; and that he would return by train either on the morning of the 8th or the morning of the 9th. And Hereford described appellant as a Negro, about 27 years of age, about 5 feet and 8 inches in height, weight about 160 pounds, and had a light brown complexion; that he wore a gray felt hat, brown slacks, black shoes, and a light brown raincoat; that he was carrying a light tan leather zipper bag; and that he habitually walked very fast. On the morning of September 8, Marsh and other officers went to the union station in Denver and watched incoming trains but they did not see anyone meeting the description which Hereford had furnished. On the following morning, Marsh and other officers again went to the station. Appellant alighted from a train arriving from Chicago. He met the description which Marsh previously received from Hereford. He walked very fast, was carrying a tan zipper bag, and had his left hand in his raincoat pocket. Without any warrant of arrest or search warrant, Marsh and a member of the police force walked up behind appellant. One took him by the left arm and the other by the right. They identified themselves and asked appellant his name. He replied that his name was Carl Francis. Marsh inquired whether he had any identification. His billfold was removed from his pocket and through that source Marsh found that he was in fact appellant. Marsh told him that he was under ar-

rest; and with some difficulty, his left hand was pulled out of the raincoat pocket. His clenched fist was around two glassine paper bags which contained approximately one ounce of heroin each. The zipper bag was opened by the officers and it contained among other things a hypodermic syringe. The testimony establishing these facts was given by Marsh. Hereford died before the hearing and therefore did not testify. The motion was denied, 146 F.Supp. 689; the seized effects were admitted in evidence on the trial of the case; appellant was convicted; and from the sentence imposed, he appealed.

It is urged that the judgment should be reversed for error in denying the motion to suppress the evidence. The argument is that the arrest of appellant was unlawful; that since the arrest was unlawful, the search and seizure were unlawful; and that the incriminating evidence obtained by means of the search and seizure was inadmissible. Section 104(a) (2) of the Narcotic Control Act of 1956, 70 Stat. 567, 26 U.S.C. § 7607 (2), provides in presently pertinent part that an agent of the Bureau of Narcotics may make arrests without warrant for violations of any law of the United States relating to narcotic drugs where such agent has reasonable grounds to believe that the person to be arrested has committed or is committing such violation. The statute does not define "reasonable grounds" to believe that a violation has been or is being committed. That question must be determined in each case depending upon the particular facts and circumstances. But it may be said in general language that "reasonable grounds" for such belief exist when the facts and circumstances, together with the reasonable inferences fairly to be drawn from them, are such as would lead a reasonably intelligent, discreet, and prudent person to conclude that there is good ground to believe that the law relating to narcotic drugs has been or is being violated. Compare, Bruner v. United States, 10 Cir., 150 F.2d 865; McIntire v. United States, 10 Cir., 217 F.2d 663, certiorari denied 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745; United States v. McCall, 10 Cir., 243 F.2d 858. And it is not essential that the agent have before him legal evidence of the suspected violation. It suffices if the apparent facts coming to his attention are sufficient to lead a reasonably discreet, cautious, and prudent man to believe in good faith that the illegal act has occurred or is occurring. Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629; United States v. Sebo, 7 Cir., 101 F.2d 889; United States v. Heitner, 2 Cir., 149 F.2d 105, certiorari denied 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432; United States v. Li Fat Tong, 2 Cir., 152 F.2d 650.

Information coming to an agent of the Bureau of Narcotics from an anonymous, undisclosed, or unverified source, standing alone and without more, is not enough to furnish such agent reasonable grounds to believe that a person has committed or is committing a violation of the Narcotics Act, and therefore may be arrested and searched without authorizing process. Worthington v. United States, 6 Cir., 166 F.2d 557; Contee v. United States, 94 U.S.App.D.C. 297, 215 F.2d 324; Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556. But the arrest, search, and seizure in this case were predicated upon more than information coming from an anonymous or undisclosed source. It came from a special employee of the Bureau of Narcotics. He had furnished information on previous occasions and it had unfailingly proved to be reliable and trustworthy. The information given on this occasion went into details. The informer gave the address of appellant; described him in respect to race, complexion, age, weight, dress, walk, and bag carried. In addition, the informer gave the time of appellant's departure from Denver, his destination, the time of his return, and his mode of travel. And the information thus furnished the agent of the Bureau was verified by the officers as far as it could be done by observation after appellant alighted from the train. He

alighted from a train inbound from Chicago. He arrived at the time specified in the information. The officers observed his race, complexion, height, weight, walk, dress, and kind of bag carried. And in respect to each and all of these details, the information furnished by the special employee was verified. The information furnished, together with the verification thereof after appellant alighted from the train, was sufficient to give the agent reasonable grounds to believe that appellant was committing a violation of the Narcotics Act. King v. United States, 9 Cir., 1 F. 2d 931; Coupe v. United States, 72 App. D.C. 86, 113 F.2d 145, certiorari denied 310 U.S. 651, 60 S.Ct. 1105, 84 L.Ed. 1417; United States v. Li Fat Tong, supra; United States v. Bianco, 3 Cir., 189 F.2d 716; United States v. Walker, 7 Cir., 246 F.2d 519. And therefore the arrest was authorized by section 104, supra.

■ The Fourth Amendment to the Constitution of the United States protects a citizen against unreasonable searches and seizures without a search warrant. But the provision does not prohibit all searches and seizures without a search warrant. It denounces only those which are unreasonable. But it does not undertake to define unreasonable searches and seizures. And there is no fixed formula for determining in every case whether a search and seizure was unreasonable. The frequently recurring question must be determined by reference to the particular facts and circumstances. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L. Ed. 653.

■ An arrest may not be used as a pretext to search for evidence of a crime. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877. But when one is lawfully arrested, a search of his person without a search warrant is not forbidden by the Fourth Amendment; and anything found upon his person which is unlawful for him to have in his possession may be seized and used as incriminating evidence against him. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; United States v. Rabinowitz, supra.

Since the arrest was authorized by section 104, supra, and since the search and seizure incident to the arrest was not an unreasonable one, within the purview of the Fourth Amendment, it follows that the motion to suppress was not well founded and that the incriminating evidence obtained by means of the search and seizure was properly admitted upon the trial of the case. Accordingly, the judgment is affirmed.

HUXMAN, Circuit Judge (dissenting).

The sole question in this case is whether the arrest and subsequent search of Draper without a warrant violated the Fourth Amendment to the United States Constitution which provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

At the outset it might be well to review some of the fundamental principles of law ingrained in English Jurisprudence in which must be found the answer to our question. It may be trite to again say that the right of citizens to be secure in their homes and persons against unreasonable searches and seizures is a most valuable right and heritage of American citizenship and that it must be guarded zealously and unrelentingly and that the courts must never permit it to be gradually whittled away under the guise of expediency or necessity. This was pointed out by Justice Sutherland in Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 249, 71 L.Ed.

520, where he said, "* * * the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods. Constitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.'" No higher authority can be found than this pronouncement, and there are no subsequent decisions by the Supreme Court lowering the high standard set thereby.

There can be no question that absent extraordinary circumstances an arrest or search without a warrant constitutes a violation of the Fourth Amendment. In the United States v. Vleck, D.C., 17 F. Supp. 110, 111, the Court said, "Generally speaking, a search warrant is required for a lawful search and seizure * * * but the right to search without the warrant is the exception and not the rule." And in McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L. Ed. 153, the Supreme Court said, "A search without a warrant is not justified unless the exigencies of the situation make that course imperative." What is true with regard to a search without a warrant is likewise true with respect to an arrest without a warrant.

Always, there must be present probable cause to believe that a crime has been committed, or is being committed, before one may obtain an arrest warrant or a search warrant, or to make an arrest or search without a warrant if such extraordinary circumstances are present which will support action without a warrant. Here the difficulty comes, as always, in determining what constitutes probable cause. Obviously no hard and fast rule can be laid down. Whether there is probable cause is a legal conclusion to be drawn from a consideration of the facts.[1]

To define probable cause is not difficult. A good definition is found in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, where the Supreme Court defined probable cause in these terms, "'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69. * * * And this 'means less than evidence which would justify condemnation' or conviction * * *. Since Marshall's time * * * it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." In United States v. McCall, 10 Cir., 243 F.2d 858, 859, we said, "But it may be said in general terms that probable cause exists where the facts and circumstances, together with the reasonable inferences fairly to be drawn from them, are such as would lead a reasonably intelligent and prudent person to conclude that there is good ground to believe that the law is being violated."

The Narcotic Agent testified that he acted solely upon the tip he received from his informer, whom he had used previously and had always found reliable. He did not know Draper, in fact, he did not know that such a person existed until he received the tip from his informer. When asked, "In other words, if it wasn't for this information there would be absolutely no facts that you personally knew that would give grounds for probable cause to arrest this man, all the facts you have were gained from this information? Is that not right?" Marsh answered simply, "That's right. That is where the information came from."

Whether hearsay evidence in the form of a tip from an informer is alone sufficient to constitute probable cause as grounds for a warrant, or arrest and search without warrant, has never been squarely passed upon by any court. At least no case so holding has come to

---

1. Mason v. Rollins, 2 Biss. 99, 16 Fed.Cas.No.9,252, p. 1061.

light. There is dicta in a number of cases touching the question, most of which is to the effect that an informer's tip alone is insufficient to constitute probable cause for action.

In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, the Court said, " * * * Probable cause exists where '*the facts and circumstances within their* [the officers'] *knowledge* [2] and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution a belief that' an offense had been or is being committed." In United States v. Bianco, 3 Cir., 189 F.2d 716, 720, where evidence had been suppressed by the Trial Court, the Appellate Court said, "If this hearsay alone supported the arrest, we would not disturb the conclusion of the district court." And in Wisniewski v. United States, 6 Cir., 47 F.2d 825, 826, where there was a tip and also other evidence the Court found reasonable cause, although "The previous information [from the informer] may have amounted to no more than ground for suspicion * * *." In United States v. Turner, D.C., 126 F. Supp. 349, 352, the Court said, "In my opinion the proper rule to be deduced from many, if not most, of the well considered cases upon the subject is that, while hearsay information only is not of itself sufficient to justify the search of a moving vehicle without a search warrant, reliable information * * *" is sufficient.

An illuminating case is United States v. Clark, D.C., 29 F.Supp. 138, 140. The facts prompting the arrest were these, (1) Clark had entered and left a certain grocery store where the agents knew narcotics were sold; (2) she (Clark) was known to be an addict; (3) a reliable informer signaled by prearranged code that she had narcotics on her person as she came out. Facts (1) and (2) were given no credence by the Court. Therefore, the question fairly presented was whether the tip from a reliable in-

former was sufficient to constitute probable cause. The Court answered in the negative saying, "It seems to us that the Fourth Amendment to the Constitution * * * is whittled away to nothingness if it is held that a citizen may be arrested and searched without a warrant of arrest or a search warrant if only it is shown that some reliable informer has said that the citizen has committed or is committing a felony, without any showing whatever (and there was none here) that the informer's information was itself more than mere guess-work and speculation."

In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 370, 92 L.Ed. 436, an informer tipped off officers that unnamed persons were smoking opium in a hotel room. He surmised this from the odor emanating therefrom. The officers rushed to the room, and clearly detected the odor. Johnson opened the door at their demand and they placed her under arrest. They searched the room and found opium. Johnson alone was present. The Court indicates its disapproval of tips alone constituting probable cause either for search or arrest when it says, "Thus the Government quite properly stakes the right to arrest, not on the informer's tip and the smell the officers recognized before entry, but on the knowledge that she was alone in the room, gained only after, and wholly by reason of, their entry of her home." The Court held the action of the officers was illegal and not based on probable cause.

Two cases are sometimes cited as indicating a contrary conclusion.[3] The King case is not helpful. It does not reveal that the officers acted on an informer's tip. It merely states that the officers had "reliable and positive information." It does not reveal the character of this information. The opinion in the Li Fat Tong case contains a statement that "There is no reason to suppose that hearsay evidence derived from an informer is not as competent evidence on which to show probable cause for an ar-

2. Emphasis supplied.

3. King v. United States, 9 Cir., 1 F.2d 931, and United States v. Li Fat Tong, 2 Cir., 152 F.2d 650, 652.

rest, * * *" as any other proof, but that statement was not necessary to the decision of the case. Standing alone this might indicate that such a tip alone was sufficient to constitute probable cause. But the statement was not the basis of the opinion. An examination of the opinion clearly reveals that there were surrounding facts and circumstances observed by the officers after they had received the tip which, considered together with the tip, constituted probable cause.

Coming then to the facts of this case, the officer who made the arrest had never heard of Draper and knew absolutely nothing of his case history or reputation as a law violator, if he had one. He acted solely on the tip from an informer whom he had used before and had found reliable. The information on which he acted was that Draper had gone to Chicago by train; that he was going to bring back approximately three ounces of heroin; that he would return by train either on the morning of the 8th or 9th. That is absolutely all the information the officer had as to the prospective commission of an offense. True, the informer described Draper as to height, weight, age, how he woud be dressed, that he would be carrying a zipper bag and that he habitually walked fast.

Let us suppose that with the informer's tip in hand the officer had applied to a Magistrate for an arrest warrant for Draper. He would have been laughed out of court. The Court would quite correctly state, "Why you are unable to even say that you have information leading a reasonably prudent person to conclude that an offense has been or is now being committed. All you have is a prediction of things to come. Giving the tip on which you are acting the broadest scope possible it merely indicates that a crime will perhaps be committed on either the 8th or 9th. When you have more definite information that an offense has been or is being committed, come back." Then let us suppose, on the 9th, when the arresting officer saw Draper get off the train and recognized him from the description he had

received, he asked the assisting policeman to keep him under observation and he hurried back to the Magistrate for the warrants, and then stated, "I now have additional information tending to corroborate the tip that an offense would be committed sufficient to lead a reasonably prudent person to believe that Draper is now committing the offense and has brought narcotics into the state" and asked for a warrant. The Magistrate then asks, "What is this additional information?" To which the officer replies, "I saw Draper get off the train coming from Chicago." The Magistrate then asks, "Did Draper go to Chicago?" To which the officer answered, "I think so, because he got off of a train that came through Chicago." The Magistrate then asks, "Was there anything suspicious about his conduct from which one might conclude that he had narcotics in his possession?" To which the officer replies, "Well no, but he was dressed as my informer said he would be dressed, he carried a zipper bag, and walked fast as the informer stated he usually walked." That is absolutely all the additional facts and circumstances the officer acquired subsequent to the original tip from which we must conclude that a reasonably prudent man might be warranted in drawing the conclusion that Draper, in fact, was violating the law at the time he stepped from the train. It is from these facts and these facts alone that a reasonably prudent person must conclude that the prediction of things to come has now come about.

As I view the case, the arrest and search must stand on the uncorroborated tip from the informer that an offense would be committed on the 8th or 9th of September, and without support of a scintilla of other evidence remotely sufficient to warrant the conclusion that Draper had committed the offense and had narcotics in his possession when he left that train. The additional facts the officers observed at the station, which my associates say corroborate the tip that an offense would be committed, and which would now warrant the officer in believing that an offense was, in fact, being committed were in their possession from

the beginning. The only function of these additional facts was to enable them to identify Draper. They were intended to serve no other purpose and were intended to establish nothing other than his identity. I fail to see how facts communicated by an informer solely for the purpose of identification can, when they are found to be true, without more evidence be said to constitute reasonable cause for believing that an offense was then being committed.

In United States v. Vleck, D.C., 17 F. Supp. 110, 111, the Court cautioned that, "When undisputed evidence of guilt is obtained as a result of an unlawful search and seizure, there is the constant tendency of courts and law enforcement officers to search out some way of circumventing the constitutional guaranties * * *." We must never permit a relaxation or whittling away of our constitutional rights under the pretext of expediency or necessity. Surely we are not so weak and impotent that we are unable to enforce all laws, giving strict adherence to constitutional provisions and rights guaranteed to the individual thereunder. For these reasons I am forced to respectfully disagree with my associates. I would reverse and remand with directions to suppress the questioned evidence.