**UNITED STATES**

v.

**DRIVE NEW CARS, Inc. et al.**

**No. 4719.**

United States Court of Appeals
Tenth Circuit.

Dec. 17, 1953.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo. (C. N. Bloomfield, Jr., Asst. U. S. Atty., Cheyenne, Wyo., on the brief), for the United States.

William T. Schwartz and William H. Brown, Jr., Casper, Wyo., for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

On March 20, 1953, the United States instituted a libel against two 1953 Plymouth Sedans, two 1952 Plymouth Sedans, and one 1950 DeSoto Sedan. Drive New Cars, Inc. was the owner of the two 1953 Plymouths. The other three automobiles were owned by Duane W. Brey.

On October 3, 1952, Brey executed and delivered to the Wyoming National Bank of Casper[1] a chattel mortgage on the two 1952 Plymouths and the DeSoto to secure a note for $6,215.60, on which there was due at the time of the hearing below, $4,142.40. The automobiles, at the time of the execution and delivery of the mortgage, were being used by Brey in his taxicab business at Casper, Wyoming.

A leasing arrangement existed between Drive New Cars, Inc. and Brey, under which cars belonging to Drive New Cars, Inc. were leased to Brey for use in such taxicab business. From and after January 22, 1953, the two 1953 Plymouths were in the possession of Brey under such leasing arrangement, and were used in his taxicab business. On January 22, 1953, Drive New Cars, Inc. executed and delivered a chattel mortgage on each of the two 1953 Plymouths to Chopping Used Cars, Inc. to secure debts aggregating $3,252.24, on which there was due at the date of hearing $2,891.08. These mortgages were assigned to the Bank on January 22, 1953.

The three mortgages were duly recorded.

Drive New Cars, Inc. and the Bank each filed applications for remission of forfeiture. From a judgment granting the claims for remission, the United States has appealed.

Both claimants for remission, with respect to the interest acquired by them, acted in good faith and without any knowledge or any reason to believe that the automobiles were being used or would be used in violation of the laws of the United States or of any state, relating to liquor.

18 U.S.C.A. § 3617(b) provides:

"In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle * * *, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle * * *, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or oth-

---

**1.** Hereinafter called the Bank.

er principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, * * *, that such other person had no such record or reputation."

Neither Drive New Cars, Inc. nor the Bank made any inquiry of any of the law-enforcement officers enumerated in the above section as to whether Brey had a reputation for violating laws of the United States or of any state, relating to liquor. Brey had no record for violating such laws.

L. D. Parker, Acting Head of the Alcohol and Tobacco Tax Division of the Director of Internal Revenue of the District of Wyoming, whose principal office is located at Cheyenne, Wyoming, testified that from a confidential but reliable source he learned on May 8, 1952, that Brey was violating the liquor laws of the United States; that because of lack of funds he did not follow up such information until September, 1952; that on September 6, 1952, he commenced an investigation with respect to the violation of Federal liquor laws by Brey; that on September 9, 1952, a purchase of intoxicating liquor was made from one of Brey's taxi drivers. The investigation was participated in by an officer assigned by the Chief of Police of Casper to work with the Alcohol Tax Unit. Other purchases were made between September 9, 1952, and March 8, 1953. While the record is not entirely clear, counsel for appellees state that Brey did not personally participate in any of such sales until March 8, 1953.

When an officer states that if inquiry had been made of him at a prior time, with respect to the reputation of a person for violation of either Federal or state liquor laws, he would have answered that such person had such a reputation, the evidence must show that he had some reasonable basis at such prior time for the answer he states he would have given. At least, the person seeking remission, on cross-examination could inquire into whether such a basis existed. Here, the trial court found that Brey had no such reputation on the crucial dates.

We deem it unnecessary to decide whether the confidential information which Parker acquired in May, 1952, alone was sufficient to warrant Parker in saying that Brey then had a reputation for violating such liquor laws. After three days of investigation and a purchase of liquor from one of Brey's drivers, we think Parker had acquired information that would have constituted a rational basis for a statement by him that on the crucial dates of October 3, 1952, and January 22, 1953, Brey had a reputation for violating Federal or state liquor laws.

The reputation need not be a general one in the community, but it is sufficient, where no inquiry was made, that such reputation exists with any one of the law-enforcement officers enumerated in the statute.[2]

It will be noted that the statute enumerates the principal Federal internal-revenue officer engaged in the enforcement of the liquor laws and is not restricted to local law-enforcement officers of the locality in question. Here, Parker was the principal internal-revenue officer engaged in the enforcement of the liquor laws in Wyoming, including the locality in question. In our opinion, he is within the class enumerated in the statute. It is, therefore, our conclusion that the finding of the trial court is clearly erroneous and that remission should not have been granted.

Reversed and Remanded with instructions to enter a judgment of forfeiture.

2. See United States v. One 1939 Model DeSoto Coupe, 10 Cir., 119 F.2d 516; Aetna Finance Co., Inc. v. United States, 10 Cir., 191 F.2d 63; Interstate Securities Co. v. United States, 10 Cir., 151 F. 2d 224.