265 F.2d 21
 UNITED STATES of America, Appellant,
v.
ONE 1957 FORD RANCHERO PICKUP TRUCK, Motor No. B7KX 125697;
Phillip Drew Parish, Ione Parish, Owners; and Bill Newport,
d/b/a Bill Newport Motor Company and Bankers Investment
Company, a corporation, Claimants, Appellees.
 No. 5956.
 United States Court of Appeals Tenth Circuit.
 Feb. 21, 1959.
 
 Harry G. Fender, Muskogee, Okl. (Frank D. McSherry and Paul M. Brewer, Muskogee, Okl., on brief), for appellant.
 John R. Richards, Tulsa, Okl., for appellees.
 Before HUXMAN, MURRAH and BREITENSTEIN, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 In this prosecution for the violation of the Internal Revenue laws relating to intoxicating liquor, the trial court sustained a motion to suppress the incriminating evidence seized in the search of the respondent pickup truck owned and operated by the Parishes, appellees. It also granted remission of the claimed forfeiture of the vehicle on the additional ground that at the time the automobile was sold to the Parishes, and the intervenor Finance Company acquired the mortgage, the Parishes had no 'record or reputating' for violation of the liquor laws within the meaning of 18 U.S.C. 3617(b).
 
 
 2
 The moving vehicle was intercepted and the occupants detained without a warrant, solely on the basis of confidential information furnished to a city policeman and relayed to a federal enforcement officer; the arrest was made and the search and seizure conducted after incriminating statements by one of the occupants, and this appeal presents the perplexing and constantly recurring question whether in the particular circumstances the enforcement officers had probable cause for doing so.
 
 
 3
 Though the ultimate question is one of probable cause, we start with the proposition that all unreasonable searches and seizures are constitutionally prohibited; that all searches and seizures without a warrant judicially issued on a factual showing of probable cause are unreasonable, and, the evidence thus obtained is inadmissible against the accused 'notwithstanding facts unquestionably showing probable cause.' Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503; Hart v. United States, 10 Cir., 162 F.2d 74. Practical considerations bordering on necessity incident to modern law enforcement have, however, moved us to concede some exceptions in the presence of extraordinary circumstances. Thus we have grudgingly sanctioned interception and apprehension of a moving vehicle or person and the search of such vehicle or person for contraband if the enforcement officer has probable cause to believe that the law is being violated in his presence and it is then impractical to secure a warrant. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Hart v. United States, supra. Cf. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.[1] This much is fairly well conceded. Contrariety comes with the necessity of judicially scrutinizing the facts upon which the officer acted. The arrest has been made, the vehicle or person has been searched, the accused has been arraigned for trial. Our function is a post mortem examination to determine whether the officer acted on facts constituting probable cause. We necessarily proceed with caution lest 'stealthy encroachments' destroy a basic concept of constitutional security and liberty.
 
 
 4
 Our solicitude for these basic concepts has undoubtedly led us to what seems to be unavoidable uncertainty and confusion in the application of the rule of probable cause to work-a-day facts. Indeed, Mr. Justice Black observed in United States v. Rabinowitz, supra, 339 U.S. at page 67, 70 S.Ct. at page 445, 'In no other field has the law's uncertainty been more clearly manifested. To some extent that uncertainty may be unavoidable.' While we cannot expect uniformity in the application of this conceptual rule, we do hope to avoid the dilemma of having the protection afforded by the Constitution turn on 'whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause.' Brinegar v. United States, supra, 338 U.S. at page 171, 69 S.Ct. at page 1308.
 
 
 5
 In our efforts to formulize for the guidance of enforcement officers who must act at the risk of judicial censure, we have stated in general terms that 'probable cause exists in a case of this kind where the facts and circumstances known to the searching and seizing officers, together with the reasonable inferences fairly to be drawn from the facts, are such as would lead a reasonably intelligent and prudent person to conclude that there is good ground to believe that the automobile is being used for the transportation of contraband liquor.' Price v. United States, 10 Cir., 262 F.2d 684, 685. See also United States v. McCall, 10 Cir., 243 F.2d 858; Carroll v. United States, supra; Brinegar v. United States, supra. The facts forming the basis for probable cause must be more than sufficient to generate a bare suspicion. Travelers upon the highway may not be 'stopped and searched at the officers' whim, caprice or mere suspicion.' Brinegar v. United States, supra (338 U.S. 160, 69 S.Ct. 1311). But the actuating facts may be less than probative evidence of guilt. Brinegar v. United States, supra; Draper v. United States, supra. In sum, the rule of probable cause is a practical nontechnical concept based upon 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra.
 
 
 6
 In our case by case application of these basic concepts, we have had occasion to consider the competency and sufficiency of confidential information standing alone to form the basis of probable cause for search and seizure without a warrant. We have said that such information is competent, together with all other facts and circumstances. United States v. One 1941 Oldsmobile Sedan, 10 Cir., 158 F.2d 818, 820. In Morgan v. United States, 10 Cir., 159 F.2d 85, we posed the question whether probable cause for search could be predicated on confidential information alone, but found it unnecessary to answer since we took the view that such information was sufficient to justify interception of the automobile for investigation, and that voluntary admissions made in the course of interrogation after detention, but before arrest, warranted the search.
 
 
 7
 In Brinegar v. United States, 10 Cir., 165 F.2d 512, we held facts within the knowledge and observation of the officers insufficient to justify chase and detention, but that voluntary statements made thereafter justified the subsequent arrest and search. On review, the Supreme Court held the facts within the officers' possession sufficient alone to justify detention and search. See Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 1312, 93 L.Ed. 1879.[2] In Draper v. United States, 10 Cir., 248 F.2d 295, we sustained the arrest and search of a moving person based solely on information from a named special employee of the Bureau of Narcotics. The Supreme Court, 358 U.S. 307, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, affirmed, noting that the information furnished the officers had 'always been found accurate and reliable', and that the arresting officers would have been derelict in their duties had they failed to pursue it.
 
 
 8
 In our last case on this question we condemned the search of an automobile without a warrant, based solely on an anonymous tip, where, after stopping the car, one of the officers broke a window with the butt of his pistol and arrested the defendant, after which he made an incriminating statement. Price v. United States, 10 Cir., 262 F.2d 684. And see also Clay v. United States, 5 Cir., 239 F.2d 196. The Price case draws a significant factual distinction from Carroll v. United States, supra; Brinegar v. United States, supra; Ray v. United States, 10 Cir., 206 F.2d 796; Fowler v. United States, 10 Cir., 239 F.2d 93; and United States v. McCall, supra, wherein incriminating facts known or observed by the enforcement officers formed the basis for the arrest and search. While no attempt was made to distinguish Price from Draper, we think a clear distinction inheres in the presence of force and violence in the Price case and the complete absence of it in Draper.
 
 
 9
 Here, about a month before the arrest and seizure, a city policeman received information that the Parishes were making whisky in the southwestern part of Muskogee County and bringing it into the City of Muskogee. About two weeks before the arrest, he received information from the same source of the make, model and license number of the pickup used to haul the whisky. About the same time, and on October 13, 1957, an investigator and Acting Group Leader of the Alcohol Tax Unit stationed at Muskogee received information from an undisclosed informant that the Parishes were engaging in the illicit whisky business in Muskogee County. On the day of the arrest, November 1, 1957, the same city policeman received information that in the early evening of that day, the Parishes would bring a load of whisky into the City of Muskogee from the southwest in the described pickup. The city policeman relayed that information to an investigator of the Alcohol Tax Unit, and the two of them took up watch at a road intersection south of Muskogee. After waiting about two hours, a Ford pickup answering the identical description given the officers passed, occupied by two persons answering the description of the Parishes. After following the pickup into the City of Muskogee, the officers overtook it and brought it to a stop. They alighted and approached the pickup from opposite sides. As they accosted the occupants, Mrs. Parish inquired why they had followed them so long and made a statement to the effect that the whisky was not theirs. About that time the officers saw two glass gallon jugs in the back of the front seat which appeared. to be nontaxpaid whisky. The arrest, search and seizure followed.
 
 
 10
 We discern no factual difference from this case and Draper v. United States, supra. Certainly none capable of being honored in humane law enforcement activities. In both cases the information was specific, definite and from sources which had proven reliable. And, they are to be distinguished from Cervantes v. United States, 9 Cir., 263 F.2d 800, where the moving car was stopped and searched before arrest merely on an 'alert' from other officers, but not from any personal knowledge or observation of the arresting officers.
 
 
 11
 The trial court in our case specifically found that the officers had ample time to procure a search warrant after receiving the confidential information, but that the Government conceded its factual insufficiency to justify the issuance of a search warrant. We are told that the practicality of obtaining a search warrant is not a 'sine qua non to the reasonableness of a search'; that the validity of the search turns 'upon the reasonableness under all the circumstances and not upon the practicality of obtaining a search warrant.' United States v. Rabinowitz, supra, 339 U.S. at page 65, 70 S.Ct. at page 435. But see also later pronouncements on this point in Giordenello v. United States, supra. Assuming that the officers had time to procure a warrant after receiving the confidential information, and that such information was insufficient to justify its issuance, it certainly cannot be gainsaid that officers with information to the effect that at a specified time a particularly described vehicle, occupied by named persons who were suspected of being in the illicit whisky business, would pass a point on the road with a load of whisky, would not be justified in taking up a watch at a vantage point. For a federal enforcement officer to ignore information of this kind would be a manifest dereliction. When, at the designated time, the described vehicle passed, occupied by two persons answering the description of the Parishes, traveling in the direction of the City, the information was no longer mere hearsay. It was thereupon reliably confirmed and assuredly provided reasonable grounds for investigation, including interception and detention. Cf. Browner v. United States, 6 Cir., 215 F.2d 753. Nor do we think it can be denied that the voluntary statement, 'the whisky is not ours', and the visible evidence thereof, together with all other facts and circumstances, constituted probable cause for an arrest and search. Cf. Petteway v. United States, 4 Cir., 261 F.2d 53. Judged by the rule of reason in the light of practical considerations of everyday life, we think the information at hand gave the officers the right and duty, first, to investigate, and from what they then saw and heard, to arrest and search.
 
 
 12
 The distinguished trial court declined to require the government to disclose the identity of the informant beyond stating that he was a white man employed with the Highway Department, and that the arresting officers had found him to be a reliable informant. In its findings of fact and conclusions of law, however, emphasis was placed on the refusal of the Government to disclose the name of the informant. And, elsewhere on the record, the court indicated a disposition to sustain all motions to suppress in cases where the Government refused to disclose the identity of the informant whose information is relied upon as the basis for probable cause.
 
 
 13
 Because of the expressed policy of both the court and the law enforcement agencies in this regard, we venture to suggest that historically and traditionally, a citizen has a right to inform law enforcement officers of violations of the law within their knowledge, and they are constitutionally protected in that right. Vogel v. Gruaz, 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158; In re Quarles and Butler, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080. To encourage the exercise of the right in the public interest, the identity of the informant is privileged, unless it becomes relevant and helpful to the defense of the accused. See Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; McInes v. United States, 9 Cir., 62 F.2d 180; United States v. Li Fat Tong, 2 Cir., 152 F.2d 650; and cases collected United States v. Keown, D.C., 19 F.Supp. 639. Within this general rule the matter of disclosure rests largely in the discretion of the trial court. But certainly disclosures in this case would not aid the defense of the charges against the accused. At most, the disclosure would bear upon the reliability of the information which prompted the officers to act in the first instance. But we do not think the identity of the informant material to the reliability of the information he gives. Certainly, reliability does not turn on the standing or reputation of the informant in the community, for reliable information of this kind may, and more often does, come from persons not noted for their respectability.
 
 Remission of Forfeiture
 
 14
 The remission of forfeiture was granted on a finding that if the claimants had made the required inquiry under Section 3617(b), 18 U.S.C., at the headquarters of the Alcohol Tax Unit before they acquired their interest in the vehicle, such inquiry would have been answered that the Parishes had no record or reputation for violation of the liquor laws of the United States or any state. The court also found, however, that on the day before the mortgagees acquired their interest in the forfeited pickup truck, Investigator Finchum, who was also acting Group Leader of the Alcohol Tax Unit at Muskogee, received information from an undisclosed informant that the Parishes were engaging in the liquor business in the southwestern part of Muskogee County; and that about the first of October, he learned from an undisclosed source the full names of the Parishes.
 
 
 15
 Investigator Finchum testified that if, on the date the mortgagees acquired their interest, inquiry had been made of him at his office, he would have replied that the Parishes had a reputation for violating the liquor laws, based on the information he had received the day before. Having failed to make inquiry as provided by Section 3617(b), the claimant is bound by the answer which any of the enumerated law enforcement agencies would have given. And, the burden is upon the claimant to show that at the time they acquired their interest in the confiscated vehicle, the Parishes had no 'record or reputation' with any of the designated officers. United States v. Chieftain Pontiac Co., 10 Cir., 218 F.2d 115, and cases cited; United States v. Interstate Securities Co., 10 Cir., 218 F.2d 243.
 
 
 16
 Since Finchum was a 'federal law enforcement officer of the locality' in which the mortgagees acquired their contract, and also of the 'locality' in which the Parishes resided, he was undoubtedly within the class of officers enumerated in the statute of whom the mortgagees were required to make inquiry, and they are therefore bound by whatever answer he would have given. Cf. United States v. Drive New Cars, 10 Cir., 208 F.2d 774; United States v. Interstate Securities Co., supra.
 
 
 17
 The trial court refused to recognize the competency of the investigator's testimony, apparently on the ground that the answer was 'based entirely upon information obtained the day before from a confidential informant' whose identity he refused to disclose. The officers' testimony concerning reputation for violation of the liquor laws must have some reasonable basis in fact, and one seeking remission is certainly entitled to inquire concerning the facts upon which the reputation is based. United States v. Drive New Cars, supra. But the statutory reputation is confined to the enumerated law enforcement officers and may of course be based on what they hear about the accused, not necessarily what they actually know about him. Interstate Securities Co. v. United States, 10 Cir., 151 F.2d 224.
 
 
 18
 We think Investigator Finchum's testimony concerning the Parishes' reputation for violation of the liquor laws was competent and legally sufficient to establish reputation, and that remission should therefore be denied.
 
 
 19
 The judgment suppressing the evidence and remitting the forfeiture is reversed with directions to proceed in accordance with the views herein expressed.
 
 
 20
 HUXMAN, Circuit Judge (dissenting).
 
 
 21
 I know of no case which has held squarely that a tip from an undisclosed informer whom the officer has found reliable on previous occasions is, of itself and without more, sufficient to constitute probable cause for a search without a warrant. It was my view that Draper v. United States was such a case. That view was not shared by my associates. They found probable cause from the tip and attending circumstances when Draper alighted from the train. That also seems to be the basis of the Supreme Court's decision if I interpret it correctly. But as I view this case, it is not necessary to the decision to answer that perplexing question here.
 
 
 22
 The right of the people to be secure against unreasonable searches and seizures is ingrained in English Jurisprudence and is guaranteed by our Constitution. Basically it is required that before an officer may come into my home or search my person, he must have a search warrant. But because of modern means of communication, some exceptions to the general rule have been recognized, especially in the case of automobiles. As pointed out by the supreme Court in the famous Carroll case, cited in the majority opinion, it would be futile to obtain a search warrant and then find that the automobile had left the jurisdiction. It is, however, only in exceptional cases which must be carefully scrutinized that a search without a warrant is lawful.
 
 
 23
 Two factors must be present to make lawful a search without a warrant. There must be probable cause for a search sufficient to warrant the issuance of a warrant, and lack of opportunity to obtain a warrant in time to effectuate the search. The court found that the officers had ample time to obtain a warrant. Since there was time to obtain a warrant, they should have gotten one. The Carroll case, cited in the majority opinion, makes it clear that where it is feasible to obtain a search warrant for an automobile, it must be obtained. The court said that, 'In cases where the securing of a warrant is reasonably practicable, it must be used * * *.' (267 U.S. 132, 45 S.Ct. 286.) In Hart v. United States, 10 Cir., 162 F.2d 74, our court held that a search of an automobile without a warrant was unlawful where there was time to obtain oneThis is not a case where the officers came upon an automobile upon the highway being operated under suspicious conditions or where they received a tip that 'John Doe' was coming into town with a carload of liquor in a car of which they did not have the exact description. They had a detailed description of the car. They knew they were going to look for a 1957 Ford Pick-Up having a 1957 Oklahoma License, Tag Number 234T906, and that when they saw it they were going to stop it and search it. The fact that the automobile was being operated upon the highway did not make uncertain the place or thing to be searched. The place to be searched was just as definite as if the warrant had described a house numbered '126 South Main Street, in the City of Podunk.'
 
 
 24
 The difficulty in which the officers found themselves was that they could not have obtained the search warrant because they had insufficient facts to warrant the issuance of one by the magistrate. The court found that, 'The Government concedes that the information received by the said officers was not sufficient for a magistrate to issue a search warrant.' That finding by the court is not challenged on this appeal.
 
 
 25
 The officers, even though they did not have probable cause for the issuance of a warrant, could go out and watch for this car for any reason, or without reason, or upon mere suspicion, and if when they saw it or any other car being operated under such conditions as would lead a reasonably prudent person to believe that the law was being violated, they could stop it and search it. But what did they see when the car came along? They saw a car operated at a reasonable speed, in a proper and lawful manner, and without a single suspicious circumstance tending to support the conclusion that the law was being violated. Under those circumstances, the tip they received is not buttressed by suspicious attending facts or circumstances when they saw the car upon the highway.
 
 
 26
 It would seem to me to be a dangerous doctrine to hold that an officer may search an automobile without a warrant on grounds insufficient to obtain a warrant, if the opportunity to obtain a warrant were present.
 
 
 27
 I am in accord with the finding of the trial court that the information which Officer Bradley received shortly before the date of the mortgage transaction was not of such a nature as to establish general knowledge within the Police Department of a reputation for law violation.
 
 
 28
 I am also in full accord with the court's judgment denying a forfeiture and granting a remission. I am, therefore, forced to respectfully dissent from the opinion of my associates reversing the judgment.
 
 
 
 [1]
 See also a very extensive treatment of this subject by Chief Judge Powell of the Criminal Court of Appeals for the State of Oklahoma in Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464
 
 
 [2]
 'In a special concurring opinion, Mr. Justice Burton took the view that 'government agents are commissioned to represent the interests of the public in the enforcement of the law and this requires affirmative action not only when there is reasonable ground for an arrest or probable cause for a search but when there is resonable ground for an investigation. This is increasingly true when the facts point directly to a crime in the course of commission in the presence of the agent.'